## Shaub, Appellant, *v.* Lancaster City.

*Municipalities—Distinction between ordinance and resolution.*

An ordinance is the form proper for city legislation, and requires the concurrence of the executive head of the municipal government; while an order or resolution is the proper form for such acts of councils as are temporary or ministerial in character, and do no require executive approval.

*Resolutions—Lancaster city—Act of April 5, 1867.*

The act of April 5, 1867 P. L. 783, amending the charter of the city of Lancaster, provides : " That it shall not be necessary for any order or resolution of either branch, or to which the concurrence of both branches of the council may be required, to be presented to the mayor for his approval, but the same shall be binding for all purposes; the councils may transact business by an order or resolution; and every such order or resolution shall be filed in the archives of the city, and shall be evidence for the purposes therein contained." *Held,* that the act did not authorize legislation by order or resolution, but merely referred to such current business as may be properly done by order or resolution.

*Resolution authorizing offer of reward—Incendiaries.*

A resolution of city councils authorizing the mayor to offer a reward for the arrest and conviction of incendiaries, is only binding upon the city for a reasonable time, and in determining what is a reasonable time the reason or necessity for the passage of a resolution must be taken into account.

In 1874, a resolution of the councils of the city of Lancaster authorized and directed the mayor to offer a reward for the arrest and conviction of incendiaries. In obedience to this resolution the mayor at once issued a proclamation offering a reward. A succeeding mayor issued a similar proclamation in 1879, and again in 1881. In 1891, plaintiff procured the arrest of an incendiary, and brought suit against the city for the reward. *Held,* that he could not recover, as the expiration of seventeen years from the resolution of council, and ten years from the last proclamation under it, was not a reasonable time.

It seems that such a resolution ought not to be acted upon, except by the mayor to whom the order is directed, nor ought its terms to bind the city ordinarily beyond the term of such officer.

Argued May 18, 1893.   Appeal, No. 42, July T., 1893, by plaintiff, Jacob C. Shaub, from order of C. P. Lancaster Co., Aug. T., 1891, No. 3, entering judgment of nonsuit.   Before STERRETT, C. J., GREEN, WILLIAMS, MITCHELL and DEAN, JJ.

At the trial before LIVINGSTON, P. J., it appeared that on Feb. 4, 1874, the select and common councils of the city of Lancaster passed the following resolution :

" " Sec. 2. That the mayor be and is hereby authorized and directed to offer a reward of five hundred dollars for the arrest and conviction of any party or parties setting fire to buildings of any description within the limits of the city, and all other resolutions in conflict herewith are hereby repealed."

In accordance with the provisions of the ordinance, and immediately after its passage, on Feb. 16, 1874, W. D. Stauffer, who was then mayor of the city of Lancaster, published a notice in the public newspapers of the city, offering a general reward for the detection and conviction of incendiaries. In 1879, John T. McGonigle, who was then mayor of the city, also published a similar notice, and on April 15, 1881, he again caused to be inserted in the " Lancaster Examiner " the following:

### " $500 REWARD.

" By virtue of the authority given me by the resolution of council of February 4, 1874, I hereby offer a reward of five hundred dollars for the arrest and conviction of any party or parties who have set fire to any of the buildings burnt by incendiary fire within the last year. And the same reward will be paid for the arrest and conviction of any person who may set fire to any building in the future.

" JOHN T. McGONIGLE, Mayor."

On or about March 5 or 6, 1891, there was an incendiary fire at the carriage works of John Feagley, within the limits of the city of Lancaster, and, at the instance of plaintiff, one George Luckenbach was arrested and convicted of the crime, and sentenced to the Huntingdon Reformatory. The plaintiff thereupon demanded the reward from the city authorities, and, upon their refusal to pay the same, brought this suit. The court entered a compulsory nonsuit and subsequently refused to take it off.

*Error assigned* was (2) refusal to take off nonsuit.

*Chas. I. Landis* and *H. M. Houser*, for appellant, cited: Act of April 5, 1867, P. L. 783; act of March 20, 1818, P. L. 207; York Borough v. Forscht, 23 Pa. 391 ; Rinehart v. Lancaster City, 18 W. N. 364.

*Wm. R. Brinton* and *John E. Snyder*, for appellee, cited: 17

A. & E. Enc. L., p. 235; Kepner v. Com., 40 Pa. 124; Fuller v. Scranton, 18 W. N. 18; Loring v. Boston, 7 Metc. 409; Loveland v. Detroit, 41 Mich. 367; Gale v. S. Berwick, 51 Me. 174; Hanger v. Des Moines, 52 Iowa, 193; Patton v. Stephens, 14 Bush (Ky.) 324; Murphy v. Jacksonville, 18 Fla. 318; Grant v. Bradford, 72 Ind. 455.

OPINION BY MR. JUSTICE WILLIAMS, July 19, 1893:

This action was brought to recover a reward of five hundred dollars from the city of Lancaster. The court below held that the plaintiff was not entitled to recover, and entered a compulsory nonsuit. The question raised by the appeal to this court is over the liability of the city. The liability asserted is under a resolution adopted in February, A. D. 1874, by the select and common council, authorizing and directing the mayor of the city to offer a reward of five hundred dollars for the arrest and conviction of any person setting incendiary fires within the limits of the city. In obedience to this resolution, the mayor at once issued a proclamation offering the reward which the resolution authorized and directed. A succeeding mayor issued a similar proclamation in 1879. Another was issued in 1881, both of which recited the resolution of 1874. Ten years after the last proclamation, in March, 1891, an incendiary fire occurred in the city of Lancaster. The plaintiff caused the arrest and conviction of the incendiary. He then applied to the city authorities for the reward offered under the resolution of 1874. Payment was refused, and this action followed.

Upon these facts ought the case to have gone to the jury? This depends upon the nature and effect of the resolution and the proclamation authorized by it. The resolution was not presented to the mayor for his approval. It was not an ordinance or law of the city in form, but an order or direction to another department of the city government to perform an act deemed necessary by councils at the time, in view of circumstances then existing. Such directions are ordinarily temporary in character and effect, and cease to be operative with the emergency or condition that gave rise to them. The plaintiff contends that the form of the action is in this case immaterial, and that the resolution is binding upon the city until it is rescinded or annulled, by reason of the act of 1867. This was

an act amending the city charter, and contained the following provision : " That it shall not be necessary for any order or resolution of either branch, or to which the concurrence of both branches of the council may be required, to be presented to the mayor for his approval, but the same shall be binding for all purposes; the councils may transact business by an order or resolution, and every such order or resolution shall be filed in the archives of the city, and shall be evidence for the purposes therein contained."    This does not authorize legislation by order or resolution, or extend the range of subjects to which such action is applicable.    It merely resolves a doubt as to the validity of orders made by the councils in cases proper for such action, by an express declaration that such orders need not be presented to the mayor for his approval.    The statute does not therefore settle our question because it does not change the general distribution of powers in the city government, or authorize legislation without reference to the mayor's approval.    On the other hand it seems to recognize and follow the distinction between an ordinance or law of the city, and an order of the councils, and to relate only to the latter.    This distinction is well stated in the American and English Encyclopedia of Law, vol. 17, p. 235 : " An ordinance prescribes a permanent rule of conduct or government.    A resolution is of a temporary character."    An ordinance is the form proper for the city legislation and requires the concurrence of the executive head of the municipal government.    An order or resolution is the form proper for such acts of councils as are temporary or ministerial in character, and do not require executive approval.    The act of 1867 recognizes, as we have said, the distinction, and relieves us of all doubt about the validity of orders and resolutions, whether such as may be adopted by either branch alone, or such as require concurrent action by both branches, but leaves the functions of the mayor wholly untouched, so far as the legislation of the city is concerned.

If this could be doubtful upon the provision we have quoted, any possible doubt is removed by the explanatory clause which follows, which states the object of the provision to be to enable councils " to transact business by an order or resolution." The " business " referred to is evidently such current business as may properly be done by order or resolution, and requires,

as ministerial acts uniformly do, unity of action. There is a sense in which all acts of council may be said to be laws, or to have the force of law, regardless of the form in which they may be cast. This was said in substance in Kepner v. The Commonwealth, 40 Pa. 124. Such acts bind the city. But there is a well marked distinction between acts that are legislative and that lay down a rule of action for the citizen or the city, and acts that relate to the daily administration of municipal affairs. The latter may well be described as " business " to be transacted by councils, and may be properly left to them to dispose of by " order or resolution." Now the resolution of 1874 was adopted by councils under the authority of the act of 1867, and it was in effect an order directed to the mayor requiring him, as the executive head of the city government, to offer a reward for the arrest and conviction of any person setting incendiary fires in the city. The mayor obeyed the " order or resolution " of councils, and offered the reward. It is evident that it was offered in view of a present emergency and to stimulate activity in relieving the city from it. When this should be accomplished the purpose of the resolution would be met. The plaintiff however contends that the resolution became in effect a law binding the city until its repeal, and that as it had not been repealed in 1891 he has a valid claim on the city for the reward.

We are to inquire therefore, how long shall the city be bound by the resolution of 1874, and the proclamation issued under it? If the plaintiff's position is correct, then we have a law passed with binding effect, without the concurrence of the mayor. The act of 1867 does not authorize or contemplate such a result, and it would be in contravention of the city charter, and the general scheme of the city government.

We must regard the resolution of 1874, therefore, as an act done in the transaction of the " business " of the city that was not intended to bind the city longer than the condition which suggested its adoption should continue.

The property of citizens and the welfare of the city were in danger from incendiary fires. The ordinary machinery for the detection and conviction of criminals seemed to be inadequate to meet the necessities of the situation. Additional and extraordinary methods were thought necessary, and to secure these

a reward was offered to any person, officer or private citizen, who should detect, and procure the conviction of, an incendiary. This was intended as a remedy for an existing evil, and when its purpose was accomplished it became functus officio. It was not a permanent law of the municipality, but a temporary order to meet a temporary necessity. For the purpose in view, it bound the city as fully as a formal ordinance could have done, but that purpose was temporary, and embraced a then existing state of things which the order was intended to aid in removing. When its work was done it required no formal repeal or rescission to terminate its operation. It expired. When a new emergency arose a new remedy could be devised and applied, and this toties quoties. For a reasonable time to accomplish its original purpose it must be binding. Beyond such reasonable time it cannot be. It is difficult to lay down a rule that shall be more definite or precise than this, and each case must stand on its own circumstances. Ordinarily such a resolution ought not to be acted upon, except by the mayor to whom the order is directed, nor ought its terms to bind the city beyond the term of such officer; but the only general rule that it is safe to lay down is that the terms of the proclamation cease to bind the city after the lapse of a reasonable time ; and in determining what is a reasonable time the reason or necessity for the action must be taken into account.

In this case seventeen years had elapsed from the date of the resolution of councils, and ten years, counting from the last proclamation made under it. This is not a reasonable time, and the city cannot be required to pay the rewards upon the evidence as it stood when the nonsuit was entered. The learned judge of the court below was right in entering the compulsory nonsuit and the judgment is affirmed.