## CHOICE et al. v. CITY OF DALLAS.
### (No. 1487.)

(Court of Civil Appeals of Texas. Amarillo. March 5, 1919. Rehearing Denied April 9, 1919.)

1. MUNICIPAL CORPORATIONS ⚍57—INCIDENTAL POWERS—DOUBT.

A municipal corporation possesses powers necessarily or fairly implied in or incident to powers expressly granted and powers essential to accomplishment of declared purposes of corporation, not simply convenient, but indispensable, and any reasonable doubt as to existence of power is resolved by courts against corporation.

2. MUNICIPAL CORPORATIONS ⚍603—CHARTER POWERS — REWARD FOR ARRESTS — "MEANS OF PROTECTION AGAINST FIRE."

Charter of city of Dallas, by article 2, § 1, subd. 2, authorizing city to make ordinances necessary to protect life and property, and by section 4, subd. 1, empowering it to provide means for protection against fires, etc., impliedly authorized an ordinance passed to obtain a lower insurance rate, offering a reward for arrest for and conviction of arson as a "means of protection against fire" (citing Words and Phrases, First Series, vol. 5, p. 4454; Second Series, vol. 3, p. 353).

3. REWARDS ⚍8—ARREST AND CONVICTION—INFORMATION.

Under an ordinance offering a reward for "arrest and conviction" for arson, the offer is complied with when one acting thereunder secures and furnishes information necessary to and which results in arrest and conviction by the properly constituted authorities.

4. REWARDS ⚍7—KNOWLEDGE OF OFFER.

The recovery of rewards offered by individuals is governed by the law of contract, and, before recovery can be had, it must appear that party claiming reward knew and acted upon the offer when services for rendition of which the reward is claimed were rendered.

5. REWARDS ⚍7—ORDINANCE—KNOWLEDGE OF OFFER.

A general reward offered by an ordinance for the arrest and conviction for arson is somewhat in the nature of a bounty, and it is not necessary for one claiming the reward to have knowledge of the existence of the offer of reward at the time of his action to secure an arrest and conviction.

6. MUNICIPAL CORPORATIONS ⚍120—"ORDINANCE"—OPERATION AS "LAW."

An ordinance is not a "law" in one sense of the word, but is a local law emanating from legislative authority and operative within its sphere as effectively as general law of the sover-

eignty (citing Words and Phrases, vol. 6, p. 5024; Second Series, vol. 3, p. 77).

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Law; Ordinance.]

7. ESTOPPEL ⊙—62(4)—MUNICIPAL CORPORATIONS—ORDINANCE—OFFERING REWARD.

A city, even if having no power to pass an ordinance offering a reward for an arrest and conviction for arson, would not be estopped from asserting its invalidity because ordinance had enabled it to secure a reduction in the rate of insurance applicable to the city and had induced plaintiff to act in pursuance of ordinance.

Appeal from District Court, Dallas County; Kenneth Foree, Judge.

Action by Mrs. M. P. Choice against the City of Dallas and A. E. Firmin and wife, with cross-bill by defendant Firmin and wife. General and special exceptions urged by defendant City to plaintiff's petition and to the cross-bill sustained, and plaintiff and Firmin and wife appeal. Reversed and remanded.

Martin L. Cooley, of Tulsa, Okl., Goggans & Smedley and Allen & Allen, all of Dallas, and A. E. Firmin, of Eastland, for appellants.

A. S. Hardwicke, Edward P. Dougherty, and Edward M. Browder, all of Dallas, for appellee.

BOYCE, J. This suit was brought by appellant Mrs. M. B. Choice against the City of Dallas to recover a reward offered by the city "for the arrest and conviction of any one guilty of arson within the corporate limits of the city of Dallas." A. E. Firmin and wife, Mrs. Nellie Firman, were made defendants on allegations that they were claiming the reward. These parties appeared, and by cross-bill sought to recover the reward. The court sustained general and special exceptions urged by the city to the plaintiff's petition and the cross-bill of Mrs. Firmin, and this appeal complains of this action.

Plaintiff alleged in her petition that on January 27, 1917, her residence in the city of Dallas was destroyed by fire set by one Mary Wright, who was by such act guilty of arson; that the plaintiff secured and furnished information and testimony that led to the arrest and conviction of the said Mary Wright of said crime; that at such time there was in force in the city of Dallas an ordinance, duly and legally passed at a time long prior to the occurrence of the fire, as follows:

"Arson Reward."

"Whereas, under provisions of law, the state fire insurance commission has provided that, where any city or town maintains a standing reward of a sum equal to $1.00 for each one hundred of population for the arrest and conviction of any one guilty of arson, in that event the insurance key rate of such city or town is entitled to credit of 2%; and

"Whereas, the crime of arson results in loss of property, causes an increase in insurance premiums, and frequently results in the loss of life. and is one of the most serious crimes against society; and

"Whereas, the city of Dallas has now a population of 130,000; and

"Whereas, the people of Dallas, through their city government, are preparing to apply to the state insurance commission for a substantial reduction in our insurance key rate:

"Now, therefore, be it resolved by the board of commissioners that the city of Dallas hereby offers a standing reward in the sum of $1,300.00 for the arrest and conviction of any one guilty of arson within the corporate limits of the city of Dallas, said reward, however, not to apply to the fire marshal, nor any other officer, city, county or state, who makes such arrest in the discharge of his official duties.

"Be it further resolved that the city fire marshal be, and that he is hereby directed to have prepared and to post placards in all public buildings in the city, showing that such reward has been offered as above described."

It is further alleged that notices of such reward were posted in accordance with the terms of such ordinance, and that by the passage thereof the city did secure the reduction in the key rate of insurance for said city, as referred to in the ordinance; that the plaintiff, with knowledge of, and acting under, said ordinance, secured and furnished such information as caused the arrest and conviction of said Mary Wright. Mrs. Firmin, joined by her husband, alleged in her cross-petition that she, and not the plaintiff, discovered the facts and furnished the information which caused the arrest and conviction of the said Mary Wright, and that she was entitled to the reward. This cross-petition contained no allegations that the cross-petitioner had any knowledge of the offer of reward or acted thereunder. The demurrers to these pleadings of the plaintiff and cross-petitioner were sustained on three grounds: (1) That the ordinance offering said reward was void as not being within the powers conferred upon the city by its charter; (2) that it did not appear that either of said claimants actually arrested the said Mary Wright; (3) that it did not appear from the cross-petition of Mrs. Firmin that she had knowledge of the offer of reward and was induced to act by reason thereof. We will consider these in the order stated.

[1, 2] The charter of the city of Dallas, which was by its terms made a public act, contains the following provisions that may have some bearing on the decision of the first question suggested. It was provided by

the terms of subdivision 2 of section 1, entitled "General Powers," under article 2, entitled "Powers of the City," that the city of Dallas should have power to enact and enforce ordinances necessary to protect the health, life, and property of the city and its inhabitants, and "that the specification of particular powers herein authorized shall never be construed as a limitation upon the general powers herein granted." Section 4, entitled "Fires," of said article 2, provided that the city should have power "to provide means for the protection against and the extinguishment of fires and shall provide for the regulation, maintenance and support of the fire department," etc. The words just quoted were contained in the first subdivision of said section 4, and are followed by many specific provisions, both in said subdivision and in other subdivisions, there being eight of such subdivisions by which authority was granted to make provisions for equipment for extinguishing fires, and to establish rules and regulations for preventing fires, and lessening the danger thereof. The final clause of this article occurring in subdivision 8 thereof reads:

"And generally the board of commissioners shall have power to establish such regulations for the prevention and 'extinguishment of fires as it may deem expedient."

There is no express reference anywhere in the charter to the subject of rewards for the conviction of incendiaries. So that, in order to support the ordinance in question, it is necessary to hold that it is authorized by one or both of the general provisions referred to. The rule for determining whether a municipal corporation is acting within its power in any particular transaction, as announced in Dillon on Municipal Corporations, § 237, has been so often approved by the decisions of our courts that it is only necessary to state it without further comment:

"It is a general and undisputed proposition of law that a municipal corporation possesses and can exercise the following powers and no others: First, those granted in express words; second, those necessarily or fairly implied in or incident to the powers expressly granted; third, those essential to the accomplishment of the declared objects and purposes of the corporation, not simply convenient, but indispensable. Any fair, reasonable, substantial doubt concerning the existence of power is resolved by the courts against the corporation and the power is denied."

This statement is quoted in the following decisions of this state: Williams v. Davidson, 43 Tex. pp. 33, 34; City of Brenham v. Brenham Water Co., 67 Tex. 542, 4 S. W. 149; Tharp v. Blake, 171 S. W. 549; City of Brenham v. Holle & Seelhorst, 153 S. W. 345.

The power exercised in the enactment of the ordinance we are considering is not granted by express words. Is it fairly or necessarily implied in or incident to the general powers expressly granted to which we have referred? We think it fairly appears from the recitation in the ordinance itself and the action of the insurance authorities in reducing the insurance rates in cities where a standing reward is offered for the arrest and conviction of incendiaries that it is recognized that the offer and publicity thereof, of such a reward, tends to lessen fires in a city. It is a commonly accepted fact that laws against crime are preventative as well as punitory, and that the prevalence of a particular class of crime decreases as the laws against it are more surely and rigidly enforced, and we may assume that it was this principle, and perhaps demonstration from experience, that led those having the power of fixing insurance rates, to reduce them in the circumstances stated. We think, therefore, that the enactment of such an ordinance may properly be said to be one "means of protection against fire." Weaver v. Scurry County, 28 S. W. 836; T. & P. Ry. Co. v. Beezley, 46 Tex. Civ. App. 108, 101 S. W. 1052; Words and Phrases, Second Series, vol. 3, p. 353; First Series, vol. 5, p. 4454. It may be suggested that the general power to provide means is limited by the express specifications following the grant of the general power. We do not think, however, that the rule of construction, "Expressio unius est exclusio alterius," is to be applied here. The connection of the general provision with what follows by the conjunctive "and" rather indicates that the particularizations that follow are not to be regarded merely as an enumeration of what was meant by the general grant, and the concluding clause of the article further emphasizes this conclusion. The same purpose to repudiate the application of the rule of construction referred to is also evidenced by the clause in subdivision 2 of section 1 of said article 2 above quoted.

The authorities are in conflict as to whether a city, under the general welfare clause, has power to offer such a reward. Dillon on Municipal Corporations (5th Ed.) § 299, and note; 19 R. C. L. p. 794; 34 Cyc. p. 1734; 24 Am. & Eng. Enc. of Law, 945. The following cases support the authority of the city in such matter: People v. Holly, 119 Mich. 637, 78 N. W. 665, 44 L. R. A. 677, 75 Am. St. Rep. 435; Cranshaw v. Roxbury, 7 Gray (Mass.) 374; Codding v. Mansfield, 7 Gray (Mass.) 272; Brown v. Bradlee, 156 Mass. 28, 30 N. E. 85, 15 L. R. A. 509, 32 Am. St. Rep. 430; Shaub v. Lancaster City, 156 Pa. 366, 26 Atl. 1067, 21 L. R. A. 691; York v. Forscht, 23 Pa. 391. The following cases deny such power: Crofut v. Danbury, 65 Conn. 294, 32 Atl. 365; Winchester

v. Redmond, 93 Va. 711, 25 S. E. 1001, 57 Am. St. Rep. 822; Murphy v. Jacksonville, 18 Fla. 318, 43 Am. Rep. 323. The authorities hold with comparative unanimity that as a general rule a municipal corporation may not offer rewards for the arrest and conviction of persons violating the criminal laws of the state. This holding is based on the ground that the enforcement of the criminal laws of the state is no part of the function of the municipality and its courts. But it was strongly reasoned in the case of People v. Holly, supra, that an exception should exist in the case of rewards offered for the conviction of incendiaries because of the fact that the crime of arson constitutes a peculiar menace to the public property of the city as well as to the property, and even lives, of its inhabitants. This reasoning appears to us to be sound, and we would be inclined to hold that the city would have the authority, under the circumstances of this case, to offer the reward under the general welfare clause. Without placing our decision specifically on either one of the clauses of the charter referred to, we are of the opinion that under the facts of this case the offer of the reward was within the power granted the city.

[3] The offer of a reward for "arrest and conviction" cannot be taken literally, as the conviction at least requires the action of the courts of the state. So it has been generally held that the terms of such an offer are complied with when one acting thereunder secures and furnishes information necessary to and which results in arrest and conviction by the properly constituted authorities, and we think this is the rule that should be applied in this case. Tobin v. McComb, 156 S. W. 237; Haskell v. Davidson, 91 Me. 488, 40 Atl. 330, 42 L. R. A. 155, 64 Am. St. Rep. 254; Kinn v. First Nat. Bank, 118 Wis. 537, 95 N. W. 969, 99 Am. St. Rep. 1012; Elkins v. Board of Wyandotte County, 86 Kan. 305, 120 Pac. 542, 46 L. R. A. (N. S.) 622; 34 Cyc. 1747.

[4-6] It is settled in this state that the recovery of rewards offered by individuals is governed by the principles of the law of contract, and that before recovery can be had it must appear that the party claiming the reward knew of and acted upon the offer when the services for the rendition of which the reward is claimed were rendered. Broadnax v. Ledbetter, 100 Tex. 375, 99 S. W. 1111, 9 L. R. A. (N. S.) 1057. The court in that case, however, suggests this distinction, which appellant Mrs. Firmin seeks to apply in this case:

"While we have seen no such distinction suggested, it may well be supposed that a person might become legally entitled to a reward for arresting a criminal, although he knew nothing of its having been offered, where it was offered in accordance with law by the government. A legal right might in such a case be given by law without the aid of contract."

A suggestion of such a distinction was also made in the cases of Clinton County v. Davis, 162 Ind. 60, 69 N. E. 680, 64 L. R. A. 780, 1 Ann. Cas. 282, and Drummond v. United States (U. S.) 35 Ct. Cl. 372. The only case we have found in which the distinction was actually applied is that of Smith v. State, 38 Nev. 477, 151 Pac. 512, L. R. A. 1916A, 1276. In that case the Governor of the state of Nevada, acting under the provisions of an act of the Legislature, offered a reward for the arrest and conviction of the murderers of certain ranchmen, and the plaintiffs, who claimed the reward, were not aware of the fact that it had been offered when they did the acts on account of which the reward was claimed. The case of Broadnax v. Ledbetter, supra, was referred to in the opinion, and the above paragraph from the decision was quoted with approval, and it was concluded by the court that in cases of this kind it was not contemplated by the Legislature that any contractual relation was necessary; "that the right to the reward follows by operation of law if a compliance with the provisions of the statute has been shown." It seems that a general reward offered by the government is regarded by these authorities somewhat in the nature of a bounty. While an ordinance is not a law, in one sense of the word it is a local law, emanating from legislative authority and operative within its limited sphere as effectively as a general law of the sovereignty. Words and Phrases, vol. 6, p. 5024; Second Series, vol. 3, p. 77. Following these authorities, we hold that it was not necessary for the cross-petitioner to allege knowledge of the existence of the reward at the time she took action to secure the arrest and conviction of Mary Wright.

[7] The appellants also urge that, even if the city had not the power to pass the ordinance, yet it would be estopped from asserting its invalidity by reason of the fact that it had been enabled by its passage to secure a reduction in the rate of insurance applicable to the city, and also induced plaintiff to act in pursuance thereof. We do not think the principle of estoppel can be applied to such facts. Noel v. City of San Antonio, 11 Tex. Civ. App. 580, 33 S. W. 263; Bigelow on Estoppel (6th Ed.) p. 503 et seq.

We are of the opinion that the court erred in sustaining the exceptions to the petition and cross-petition, and the case will be reversed and remanded.