VISCH *v.* CITY OF GRAND RAPIDS.

REWARDS—MUNICIPAL CORPORATIONS—VIOLATION OF STATE LAW.
  City may lawfully offer reward for information leading to apprehension and conviction of violators of State law within city boundaries.

Appeal from Superior Court of Grand Rapids; Verdier (Leonard D.), J. Submitted June 10, 1932. (Docket No. 105, Calendar No. 36,538.) Decided October 3, 1932.

Assumpsit by Harry Visch against City of Grand Rapids, a municipal corporation, for reward offered by city commission for capture of robbers. Judgment for plaintiff. Defendant appeals. Affirmed.

*Leo W. Walsh,* for plaintiff.

*Dale Souter* and *Robert S. Tubbs,* for defendant.

BUTZEL, J.  Following an epidemic of grocery store and oil station robberies and the failure of the police to apprehend the robbers, the city commission of Grand Rapids adopted a resolution offering a reward of $100 for information leading to the apprehension and conviction of any person committing a robbery while armed with a gun within the city of Grand Rapids. Harry Visch, plaintiff, who is not a police officer, gave information leading to the apprehension and conviction of a robber. He brought suit to recover the $100 reward, and the city appeals from the judgment rendered in his favor.

The sole question presented on appeal is whether the offer of a reward by a city, for information leading to the apprehension and conviction of violators of a State law within the city boundaries, is an *ultra vires* act. The judge in his findings stated that, in Kent county, in which Grand Rapids is located, most of the work of enforcing the State law is divided. The police department assumes the responsibility of enforcing the law and apprehending those who break it in the city, and the sheriff and his force confine their efforts largely to the county territory outside the city. A gradual division of authority between them has developed until a situation has arisen where, in practical effect, the city has become the agent of the State, on whom rests almost entirely the duty of enforcing the State laws within the limits of the city. In the provisions of the city charter, the city commission is vested with power to pass all ordinances and regulations of every character to secure the public health, safety, welfare, convenience, and for promoting the prosperity, welfare, and happiness of the citizens and taxpayers (Grand Rapids city charter, title 5, § 2).

It has been quite generally held in other jurisdictions that a municipal corporation may offer rewards for the apprehension and conviction of offenders against local regulations, but not of violators of the general criminal laws of the State, even though such infractions be committed within the city limits. See 1 McQuillin, Municipal Corporations (2d Ed.), § 403; *Hagan* v. *Black,* 159 Tenn. 290 (17 S. W. [2d] 908); *Barrett* v. *City of Atlanta,* 145 Ga. 678 (89 S. E. 781); *Felker* v. *Board of Com'rs of Elk County,* 70 Kan. 96 (78 Pac. 167, 3 Ann. Cas. 156). It will be noted, however, that the cases denying the city the right to offer a reward for apprehension of violators of the State law are largely based on decisions rendered in earlier days when cities were small and sparsely inhabited. The classic case, often referred to, is that of *Baker* v. *City of Washington,* 7 D. C. 134, where it was held that defendant had no authority to offer a reward of $20,000 for the capture of the slayer of President Lincoln. See, also, *City of Winchester* v. *Redmond,* 93 Va. 711 (25 S. E. 1001, 57 Am. St. Rep. 822). The cases are referred to in *People, ex rel. Attorney General,* v. *Village of Holly,* 119 Mich. 637 (44 L. R. A. 677, 75 Am. St. Rep. 435), where it was held that an incorporated village, under its power to provide for the safety and general welfare of its inhabitants, had the right to offer a reward for the conviction of persons who set fire to buildings within the city limits. To like effect are *Brown* v. *Bradlee,* 156 Mass. 28 (30 N. E. 85, 15 L. R. A. 509, 32 Am. St. Rep. 430); *Shaub* v. *Lancaster City,* 156 Pa. 362 (26 Atl. 1067, 21 L. R. A. 691); *Choice* v. *City of Dallas* (Tex. Civ. App.), 210 S. W. 753. On the other hand, it was held in *Day* v. *Otis,* 90 Mass. 477, that the city had no power to offer a reward for the arrest

of murderers.   Adhering to the reasoning in *People*
v. *Holly, supra,* we believe that it becomes a neces-
sary and a proper function for the city to offer re-
wards for the apprehension of criminals other than
those guilty of arson.   Notwithstanding the fact
that the sheriff of the county and the State police
are charged with the duty of apprehending vio-
lators of the State law, nevertheless, the burden and
expense rests almost wholly upon the city.   A very
large proportion of the amount collected for city
taxes must be devoted to the maintenance of a very
large police force, whose officers are largely engaged
in apprehending those guilty of State felonies.   The
problem of crime is different from that of former
years.   Congestion, well-paved streets, dark alleys,
wide areas, together with multiple apartment and
office buildings, all afford criminals opportunities
to make a quick escape and to hide within the very
confines of the city.   The numerous acts of banditry
make it necessary for the city to maintain the ex-
pense of extra lighting at nighttime and a very large
force of patrolmen and detectives.   It becomes nec-
essary to maintain a large pension fund in many
cities to care for police officers or their dependents,
when such officers are killed or maimed in the course
of duty.   Not infrequently innocent bystanders are
killed or severely injured in city streets while crimes
are being committed or efforts made to capture the
offenders.   A resident of a city and the victim of a
crime does not ask whether there has been a viola-
tion of a State or municipal regulation.   He looks
to and depends for his protection almost entirely
upon the city police department, maintained at a
very large cost to the local taxpayers.   According
to No. 12 of the Wickersham Report (National Com-
mission of Law Observance and Enforcement),

p. 327, the cost of operating the police department of Grand Rapids in one year was $381,278. The armed robberies in Grand Rapids during 1931 totaled 127, while in Detroit during the same period 1,588 were committed (Uniform Crime Reports for the Department of Justice, Washington, Vol. 2, No. 12, p. 16).

Following the reasoning in *People* v. *Holly, supra,* we are led to the conclusion that the offering of the reward by the city was proper, and the judgment should be affirmed, with costs to plaintiff.

CLARK, C. J., and McDONALD, POTTER, SHARPE, NORTH, FEAD, and WIEST, JJ., concurred.