Wiley *v.* Woods, Appellant.

342

Argued March 24, 1958.   Before JONES, C. J., BELL, CHIDSEY, MUSMANNO, ARNOLD, JONES and COHEN, JJ.

*David Stahl*, Assistant City Solicitor, with him *J. Frank McKenna, Jr.*, for appellants.

*Ralph H. Smith, Jr.*, with him *Smith, Smith & Zehner*, for appellee.

OPINION BY MR. JUSTICE BENJAMIN R. JONES, May 26, 1958:

Lillian R. Wiley, appellee, petitioned the Planning Commission of the City of Pittsburgh to recommend to the City Council of Pittsburgh that a certain portion of Wallingford Street, located in the Seventh Ward of Pittsburgh, be rezoned from a "C" Residence District to a "B" Residence District.[1]

On August 6, 1957, the Planning Commission denied appellee's petition because her rezoning request was inconsistent with a proposed zoning of Wallingford Street under a new and comprehensive zoning ordinance then pending before City Council. *Subsequent to the Commission's denial of appellee's petition,* an

[1] Under the zoning ordinance a "C" Residence District was restricted to one-family dwellings, while in a "B" Residence District both one-family and two-family dwellings were permitted as well as the rental of rooms.

inquiry concerning the matter was made by a member of City Council. Pursuant to this inquiry a survey of the properties in that portion of Wallingford Street in which appellee was interested was made by a staff member of the Department of City Planning, field investigation notes were prepared and a report made on September 27, 1957 to that member of City Council who had made the inquiry.[2]

Appellee sought to examine and inspect all data in the Department of City Planning pertaining to the petition for rezoning. The only data in that office consisted of (a) the report made to the member of City Council, (b) the record of the Commission's denial of the rezoning petition and (c) field investigation notes. The latter consisted of pages from an atlas upon which notations were made representing the properties investigated on Wallingford Street, indicating what the investigator learned from conversations with occupants thereof and from observations with respect to the use of each property. The report to the City Councilman contains a complete summary of the field investigation study; the only information contained in the field investigation notes omitted in the report is the identification of the investigator's notations with each particular structure in the area surveyed. Appellee was permitted to examine and inspect the report made to the member of City Council and the record of the Commission's denial of the rezoning petition but not the field investigation notes.

Appellee then instituted a mandamus action against C. Ronald Woods, Planning Director, the Department of City Planning of the City of Pittsburgh and the Planning Commission to permit her to examine all

---

[2] The Court below noted: "It is worthy of note that the field investigation was *not* made to determine what action should be taken on the petition for a change of zoning."

the records, including the field investigation notes, in the Commission's file with respect to the Wallingford Street matter. A hearing was held before the Court of Common Pleas of Allegheny County; after hearing, the Court directed appellants to permit appellee to examine and inspect the field investigation notes although the Planning Commission, in its discretion, was allowed to delete the names and addresses of any persons who furnished information to the staff investigator. This appeal questions the validity of that order.

Appellants contend that appellee has no right, either at common law or by statute, to examine the field investigation notes; that the Act of 1957,[3] termed the "right to know" statute, excepts from disclosure such data as field investigation notes; that appellee's remedy by way of mandamus is improper. On the other hand, appellee's argument is three-fold: that both by statute[4] and at common law the field investigation notes are open to her examination; that the Act of 1957, supra, is inapplicable to her; that the deprivation of the right to examine the investigation notes violates her constitutional right to due process of law.

The Department of City Planning and a Planning Commission in second class cities were created by the Act of 1927, supra. Section 3 provides, inter alia, that the Planning Commission "shall adopt rules for transaction of all business and *shall keep a record of its resolutions, transactions, findings, and determinations which shall be a public record."*[5] Section 8 imposes upon the Commission the duty "to consult and advise with public officials and agencies, public utility com-

---

[3] Act No. 212, approved June 21, 1957, P. L. 390.

[4] Act of May 13, 1927, P. L. 1011, §1 et seq., 53 PS §22761 et seq.

[5] Emphasis supplied.

panies, civic, educational, professional, and other organizations, and citizens . . ." in connection with its planning, and that its reports to the City Council "shall be for the information of the public as well as of council . . ." Appellee contends that the "field investigation notes" are "resolutions, transactions, findings and determinations" within the language of this statute and, therefore, public records. Appellee's argument in this respect is without merit. Investigation data do not fall within the category of "resolutions", "transactions", "findings" or "determinations" under the statutory definition of public records.[6] Such a construction would be a complete negation of the plain statutory language and a misconstruction of both the legislative purpose and intent.

While it is true that our courts have recognized the right to an examination of public records, either under statutory grant or on common law principles (*Simon Election Case*, 353 Pa. 514, 46 A. 2d 243; *Commonwealth ex rel. Eagen v. Dunmore Borough School Directors et al.*, 343 Pa. 440, 23 A. 2d 468; *Butcher v.*

---

[6] A resolution is " 'A formal expression of the opinion or will of an official body or public assembly, adopted by vote; as a legislative resolution' ": *Scudder v. Smith et al.*, 331 Pa. 165, 170, 200 A. 601: *Commonwealth ex rel. v. Bitner*, 294 Pa. 549, 144 A. 733; *Shaub v. Lancaster City*, 156 Pa. 362, 365, 26 A. 1067. "Transactions", when used in connection with public bodies, are the "proceedings" or "actions" of such bodies; Webster's New International Dictionary (2d ed.) p. 2688; The Oxford English Dictionary, Vol. X. Ti-Tz, p. 251. Cf: *City Stores Co. v. Philadelphia*, 376 Pa. 482, 488, 103 A. 2d 664; *Philadelphia Appeal*, 383 Pa. 428, 119 A. 2d 205: *City of St. Paul v. Robinson*, 129 Minn. 383, 152 N.W. 777, 778. The word "findings", used with reference to public bodies, refers to formal actions of such bodies: *Mulholland v. Unemployment Compensation Board of Review*, 144 Pa. Superior Ct. 566, 568, 20 A. 2d 877. The "determinations" of public bodies are the "conclusions" of such bodies: *Bishop v. Reichel*, 127 Fed. Supp. 750, 752; *Parkplain Realty Corporation v. Town Board*, 137 N.Y.S. 2d 474, 476.

*Philadelphia Civil Service Commission et al.*, 163 Pa. Superior Ct. 343, 61 A. 2d 367), however, we find no reported decision extending the right of examination and inspection to data such as the instant investigation notes. *Butcher v. Philadelphia Civil Service Commission et al.*, supra, *Simon Election Case*, supra, and *Commonwealth v. Walton*, 182 Pa. 373, 38 A. 790, relied upon by appellee, do not sustain a citizen's right to an examination and inspection of records which do not fall clearly within the category of public records. The appellee, neither under the 1927 statute, supra, nor at common law, has the right of examination and inspection of these investigation notes.

The Act of June 21, 1957, supra, requires "certain records of the Commonwealth and its political subdivisions and of certain authorities and other agencies performing essential governmental functions, to be open for examination and inspection by citizens of the Commonwealth of Pennsylvania . . ." Section 1(2) defines a "public record": "any account, voucher or contract dealing with the receipt or disbursement of funds by an agency or its acquisition, use or disposal of services or of supplies, materials, equipment or other property and any minute, order or decision by an agency fixing the personal or property rights, privileges, immunities, duties or obligations of any person or group of persons . . ." The legislature excepted, however, from its definition of public records "any report, communication or other paper, the publication of which would disclose the institution, progress or result of an investigation undertaken by an agency in the performance of its official duties . . . ." The type of records or papers herein sought to be examined and inspected—notes of a field investigation—are clearly not embraced within the statute's definition of "public records" and are within the category of records ex-

cepted and excluded from the definition of "public records". Under this statute appellee has no right to an examination of the field investigation notes.

The court below, however, decided that the 1957 statute did not apply to the appellee on the ground that that statute applies only to citizens in general as distinguished from citizens who have a personal or property interest in the examination of public records. In this respect the court below erred. Section 2 of the statute opens public records to examination and inspection by *"any* citizen of the Commonwealth of Pennslyvania"; Section 3 gives to *"any* citizen of the Commonwealth of Pennsylvania" the right to take extracts, make copies, photographs or photostats of public records; Section 4 grants the right of appeal from the denial of such right to *"any* citizen of the Commonwealth of Pennsylvania".[7] Despite the all inclusive character of the statutory language the court below limited the application of the statute to those citizens who have no interest, personal or property, in the examination and inspection of the records. The rationale of this determination was that, since prior to the 1957 statute any person who had a personal or property interest was entitled to examine and inspect public records, the purpose of the statute was to "enlarge the rights of the general public for the examination and inspection of public records" and not to divest or restrict such rights previously vested in persons having a personal or property interest. Such a construction of the statute ignores the plain language of the statute, the state of the law on the subject prior to the statute and erroneously assumed that notes of field investigations were public records open for disclosure to appellee prior to the statute.

---

[7] Emphasis supplied

Prior to the enactment of the 1957 statute, the right of a citizen to the examination and inspection of public records was the subject of some confusion.[8] Un-

---

[8] In *Commonwealth ex rel. Biddle v. Walton*, 6 Pa. Dist. Rep. 287, wherein the opinion writer stated that this was the first case involving the right of a citizen to inspect public records in the State, the Court stated: "it may now be regarded as settled law in this country that every corporator or citizen of a municipality has the right, on all proper occasions, to inspect and copy its records, books and documents". In *Owens & Short v. Woolridge et al.*, 8 Pa. Dist. Rep. 305, the Court required that a private interest be shown before a citizen could examine the public records in the County Commissioners' office. *Commonwealth ex rel. Walton v. Bair*, 5 Pa. Dist. Rep. 488, permitted any citizen, without showing of private interest, to examine petitions for liquor licenses. See also: *Commonwealth v. Weaver*, 14 Pa. Dist. Rep. 302. *Commonwealth ex rel. Milliken v. Board of Revision of Taxes*, 23 Pa. Dist. Rep. 424, refused a citizen, without proof of a special or a personal interest, the right to inspect the record book in which the Assessment Board entered its action upon applications for assessment reductions. In *"North American's" Application*, 40 Pa. County Ct. 649. Attorney General John C. Bell, after stating that there were two views, "one to the effect that before an applicant is entitled to inspect a public record he must show that he has an interest in the record or document sought to be inspected and that the application is for a legitimate purpose . . .; the other that a public record is accessible to all", rendered an opinion that any citizen has the right to inspect public records in the Attorney General's office. See also: *Stegmaier v. Jones*, 203 Pa. 47, 52 A. 56; *Commonwealth ex rel. v. Mitchell*, 82 Pa. 343, and *Austin v. Dauphin County Board of Elections*, 79 D. & C. 562, all of which hold that a public duty of an elected official can only be enforced by the Attorney General, the District Attorney or a private citizen having a "specific and independent legal right or interest in himself, different from the public at large". In *Simon Election Case*, 353 Pa. 514, 518, 519, 46 A. 2d 243, this Court said: "Public records are available to the inspection of *any* citizen at all reasonable times. These public records [military ballots] should have been available to stand the test of scrutiny *by any party in interest.*" (Emphasis supplied). In *Butcher v. Philadelphia Civil Service Commission et al.*, 163 Pa. Superior Ct. 343, 345, 61 A. 2d 367, Judge (now Mr. Justice) Ar-

doubtedly, the legislature intended through the medium of the statute a clarification of the right of examination and inspection of public records by all citizens, regardless of their interest or the extent or nature thereof. Within the statutory language is embraced all citizens and not simply those citizens who by some courts might be denied the right of examination and inspection because of lack of interest or legitimate purpose. Neither the legislative history nor the statutory language justify the narrow and restricted application placed upon this statute by the court below. The 1957 statute is clearly applicable to appellee,[9] and it excludes from disclosure as "public records" data such as the instant "field investigation notes"; this conclusion is inescapable both by the letter and spirit of the legislative enactment.

Appellee urges that a denial to her of the right of examination and inspection of these field investigation notes deprives her of the constitutional right to due process of law. "Due process of law", while incapable of exact definition, generally means "law in the regular course of administration through courts of justice, according to those rules and forms which have been established for the protection of human rights": 12

NOLD said: "We agree with the appellant that where, by statute, records are open to public inspection, such right need be sustained by no particular reason and may be exercised out of idle curiosity . . ." In *Holmes Appeal*, 175 Pa. Superior Ct. 137, 103 A. 2d 454, aff'd 379 Pa. 599, 109 A. 2d 523, the Court interpreted a statute which granted the right to examine records of the Juvenile Court to intend that such right be exercised by persons "having a legitimate interest". See also: *Mont Appeal*, 175 Pa. Superior Ct. 150, 157, 103 A. 2d 460.

[9] In view of the applicability of this statute appellee's resort to mandamus as a remedy was improper. Section 4 of the statute provides the exclusive remedy to a person denied the right of examination and inspection of public records.

Am. Jur. §571, p. 264, and cases therein cited.[10]   Its essential elements are "notice and opportunity to be heard and to defend in an orderly proceeding adapted to the nature of the case before a tribunal having jurisdiction of the cause": 12 Am. Jur. §573, pp. 267, 268; *Com. ex rel. Chidsey v. Keystone Mut. Cas. Co.*, 373 Pa. 105, 109, 95 A. 2d 664; *Carter v. Kubler*, 320 U.S. 243, 88 L. ed. 26, 64 S. Ct. 1; *Ohio Bell Telephone v. Public Utilities Commission of Ohio*, 301 U.S. 292, 81 L. ed. 1093, 57 S. Ct. 724; *Interstate Commerce Commission v. Louisville & Nashville Ry. Co.*, 227 U.S. 88, 57 L. ed. 431, 33 S. Ct. 185; *Jordan v. American Eagle Fire Insurance Company*, 169 F. 2d 281, 288. That the principle of due process is fully applicable to hearings before administrative tribunals is well established: *Commonwealth ex rel. Chidsey v. Mallen et al.*, 360 Pa. 606, 63 A. 2d 49; *Pittsburgh v. Pennsylvania Public Utility Commission*, 171 Pa. Superior Ct. 391, 90 A. 2d 850.

While "there is no table of weights and measures for ascertaining what constitutes due process" (*U.S. v. Witmer*, 115 F. Supp. 19, 24, aff'd 213 F. 2d 95, aff'd 348 U.S. 375, 99 L. ed. 428, 75 S. Ct. 392), yet each factual situation must be closely examined to determine the applicability of the principle of due process.  As the United States Supreme Court has said in *Betts v. Brady*, 316 U.S. 455, 462, 86 L. ed. 1595, 62 S. Ct. 1252: "Asserted denial [of due process] is to be tested by an appraisal of the totality of facts in a given case". In the present situation the evidence contained in the field investigation notes did not form the basis of any determination, conclusion or decision either of the

---

[10] "A law which hears before it condemns; which proceeds upon inquiry, and renders judgment only after trial": Daniel Webster's argument in *The Trustees of Dartmouth College v. Woodward*, 4 Wheat. (U. S.) 518, 4 L. Ed. 629.

Planning Commission or of the City Council. The investigation was not made nor the notes prepared until *after* the Planning Commission had denied appellee's petition for rezoning. There is nothing of record to justify a conclusion that the investigation data was furnished to influence or justify any decision, determination or conclusion of City Council or that City Council made any decision based on such data. The notes were simply prepared for and in connection with a report made not to City Council but to an individual member thereof. Appellee's argument that such data did or would furnish the basis for ultimate action by the City Council is not justified by the record. Withholding of the information contained in these notes does not deprive the appellee of any right to seek a zoning change in connection with her property; in fact, the information contained in these notes was summarized in the report to the member of City Council and made available to the appellee. Appellee has not been deprived of any opportunity for a hearing in connection with her proposal to rezone the area in which her property is situated, and full opportunity is open to appellee to test the constitutionality of the zoning ordinance as it applies to her property, an opportunity which would embrace a full and complete hearing.

As the late Chief Justice HUGHES said in *Corporation Commission v. Lowe,* 281 U.S. 431, 438, 74 L. Ed. 945, 50 S. Ct. 397: "An infraction of the constitutional provision [14th amendment] is not to be assumed. On the contrary, it is to be presumed that the State in enforcing its local policies will conform its requirements to the federal guarantees. Doubts on this point are to be resolved in favor of, and not against the State". While included among the procedural necessities of due process applicable to administrative tri-

bunals are a revelation of the evidence upon which the disputed administrative order is based, an opportunity to explore that evidence and a conclusion based upon reason (*Jordan v. American Eagle Fire Insurance Company*, supra, 288, 289, and cases therein cited) the instant factual situation does not reveal any failure to disclose or any deprivation of an opportunity to explore evidence upon which any disputed administrative order has been based.

Neither at common law, nor by statute (particularly under the 1957 statute), has the appellee the right of examination and inspection of appellant's "field investigation notes" which are clearly not public records.[11]

Order reversed. Costs on appellee.

Mr. Justice MUSMANNO dissents.

---

[11] Cf: *Blanford et al. v. McClellan*, 16 N.Y.S. 2d 919; *New York Post Corporation v. Leibowitz*, 147 N.Y.S. 2d 782; *Round v. O'Meara*, 197 Mass. 218, 83 N.E. 412; *People v. Pearson*, 111 Cal. App. 2d 9, 244 P. 2d 35; *State v. Brantley*, 201 Ore. 637, 271 P. 2d 668; *Robison et al. v. Fishback*, 175 Ind. 132, 93 N.E. 666; *People v. Purcell*, 22 Cal. App. 2d 126, 70 P. 2d 706; *Allen v. Kidd*, 197 Mass. 256, 84 N.E. 122; *Mathews v. Pyle*, 75 Ariz. 76, 251 P. 2d 893; *Tagliabue v. North Bergen Township*, 9 N.J. 32, 86 A. 2d 773; *Banks v. Southern Potteries, Inc.*, 30 Tenn. Appeals 199, 204 S.W. 2d 382.