## Kegel v. Community College
## of Beaver County

*Gerald E. Crowley*, for plaintiffs.

*Harold E. Craig*, for defendant.

ROWLEY, J., May 12, 1972.—This case presents the question whether a community college, created pursuant to the Community College Act of August 24, 1963, P. L. 1132, 24 PS §5201, et seq., is an "agency" subject to the requirements of the Right to Know Act of June 21, 1957, P. L. 390, 65 PS §66.1(1), and, if so, whether individual salaries of college employes are "public records" under the Right to Know statute.

Appellants, William C. Kegel and Charles R. Moser, are the publisher and editor, respectively, of the Ellwood City Ledger, a newspaper of general circulation in Beaver and Lawrence Counties. The Community College of Beaver County (college) was created pursuant to the provisions of the Community College Act of 1963. Appellants requested, from the college, information regarding the individual salaries of all employes of the college. The officials of the college gave appellants the following detailed information:

"a. The College's salary schedule which includes rank, salary range, and minimum qualifications for academic, professional, and clerical personnel.

"b. Statistics comparing by position the College's

salary schedule, the actual salary range, and the average salary with other community colleges in Pennsylvania.

"c. The salary of any professional administrative staff member with a salary over $15,000.00 per year, at the time of his appointment.

"d. The annual salary of the president.

"e. Annual guidelines for salary increases as approved by the Board of Trustees.

"f. The previous year's guidelines for salary increases and the average salary increases."

In addition, the officials of the college, pursuant to a request of the Faculty Senate, offered to furnish appellants with the individual salaries of all college employes provided appellants would agree not to publish the latter information. Appellants rejected the condition of nonpublication and appealed to this court pursuant to section 4 of the Right to Know statute. Appellants contend that they are entitled, as a matter of right, to disclosure of the individual salaries of all college employes by virtue of section 2 of the statute which requires that "Every public record of an agency shall, at reasonable times, be open for examination and inspection by any citizen of the Commonwealth of Pennsylvania." On the other hand, the college contends that it is not an "agency" under the statute and, therefore, the provisions of the statute are not applicable to it. In addition, the college contends that the individual salaries of college employes are not "public records" as defined in the statute.

The parties have filed a written stipulation of facts. No additional testimony or evidence was presented. The matter has been argued before .the court and written briefs were filed by the parties. We have concluded that the appeal must be sustained.

The college argues first that it is not an "agency"

as defined in the Right to Know statute. In section 1(1), the legislature defined "agency" as:

"Any department, board or commission of the executive branch of the Commonwealth, any political subdivision of the Commonwealth, the Pennsylvania Turnpike Commission, or any State or municipal authority *or similar organization created by or pursuant to a statute which declares in substance that such organization performs or has for its purpose the performance of an essential governmental function.*" (Italics supplied.)

It is conceded that the college is not one of the departments, boards, commissions, subdivisions or authorities expressly mentioned in the statute. On the other hand, it is clear that the college is "similar" in some respects to such named organizations. The question, therefore, is whether the Community College Act of 1963 "declares *in substance*" that colleges organized thereunder perform or have for their purpose "the performance of an essential governmental function." A careful reading of the Community College Act discloses that the words "essential governmental function" do not appear therein. It is not necessary, however, that those precise words be used by the legislature. It is sufficient to bring the college within the reach of the Right to Know statute if the Community College Act, read in its entirety, constitutes *"in substance"* a declaration by the legislature that the colleges organized thereunder are to perform an essential governmental function.

Community colleges are established and operated by a local sponsor. The members of the local sponsor are political subdivisions of the Commonwealth. The trustees of the colleges are appointed by the elected officials of the member political subdivisions. No college may be established unless the State Board of

Education approves the proposed plan. Colleges established pursuant to the act are subject to the policies, rules and regulations formulated by the Council of Higher Education and adopted by the State Board of Education. A community college is defined as a *"public college or technical institute"* which provides a variety of two-year educational programs for both young people and adults. The colleges are financed, in large part, by appropriations from the members of the local sponsor and from the legislature. All college employes are eligible for inclusion in the Public School Employes Retirement system, and the college is eligible to participate in the State Public School Building Authority Act. Finally, and we believe of extreme importance in disposing of the issue before us, no college is to be established unless the State Board of Education determines, among other things, that the area included within the local sponsor is *not* already "adequately served by established institutions of higher learning": Section 3(d).

In Schofield v. Donato, 429 Pa. 435, 439 (1968), the court, in discussing the nature of community colleges, said that the local sponsor is a "well-defined body composed of nothing but elected officials banding together for a common, legislatively-authorized purpose."

We are of the opinion that a careful consideration of the entire Community College Act, and the nature of the institutions created thereunder, constitute a very substantial declaration by the legislature that a necessary and essential governmental function is being fulfilled. The phrase "in substance" is defined in Webster's New World Dictionary, College Edition, as having "regard to essential elements; substantially; actually; really." Viewed in this light, we believe the entire tenor of the Community College Act brings the

colleges created under it within the definition of an "agency" in the Right to Know statute. This is particularly true when we consider that a community college is not to be established unless the State Board of Education has determined that the area to be served is not already adequately served by established institutions of higher learning. In other words, those colleges established under the act are established for the purpose of furnishing a program of higher learning to those areas of the Commonwealth not already adequately served. Considering the importance that the people of this Commonwealth place on education, we are satisfied that this is the furnishing of an essential governmental function. In article 10, sec. 1, of the Constitution of 1874, the General Assembly was required to provide a system of public schools for "the children of this Commonwealth above the age of 6 years." In article 3, sec. 14, of the Constitution of 1967, the people of the Commonwealth provided that the General Assembly should "provide for the maintenance and support of a thorough and efficient system of public education to serve the needs of the Commonwealth." This provision enlarges the duty of the General Assembly to provide education for the citizens of Pennsylvania. In Teachers' Tenure Act Cases, 329 Pa. 213 (1938), the Supreme Court, in discussing the importance of education, described it as an "indispensable governmental function." The court said, at pages 223 and 224:

"We had occasion to discuss the origin of our present public school system in Wilson v. School Dist. of Philadelphia, 328 Pa. 225, 195 A. 90. The Constitution of Pennsylvania, by Article X, Section 1, not only recognizes that the cause of education is one of the distinct obligations of the State, but makes of it an indispensable governmental function. The power of

the State over education thus falls into that class of powers which are made fundamental to our government. In the abstract it is not an absolute essential to government as taxation, law enforcement and preservation of the peace are essential, but by the express provision of the Constitution it ranks with them as an element necessary for the sustenance and preservation of our modern State. Education is to-day regarded as one of the bulwarks of democratic government. Democracy depends for its very existence upon the enlightened intelligence of its citizens and electors. When the people directed through the Constitution that the General Assembly should 'provide for the maintenance and support of a thorough and efficient system of public schools,' it was a positive mandate that no legislature could ignore. The power over education is an attribute of government that cannot be legislatively extinguished. It cannot be bargained away or fettered. Its benefits to a free government cannot be placed on the auction block or impeded by laws which will ultimately weaken, if not destroy, the underlying constitutional purpose. To permit such legislative incursion would relegate our State back to the days when education was scarce and was secured only through private sources, as a privilege of the rich."

Certainly, the cause of education is one of the most important and most essential programs undertaken by the government of this State. By enacting the Community College Act, the legislature disclosed an awareness of, and an effort to fulfill, the need for continued education in those areas not adequately served. They did this by authorizing the establishment of what is, in essence, a public institution supported primarily by public tax moneys. This appears to us to be a clear and substantial declaration by the General Assembly

that these institutions are created to perform an essential program or function imposed on the legislature by the people of this Commonwealth through their Constitution.

We should also keep in mind in construing the Right to Know statute that we are, if possible, to ascertain and effectuate the intention of the legislature. In Wiley v. Woods, 393 Pa. 341 (1958), the court, in discussing the Right to Know statute, stated that the legislature had intended, by enacting it, to clarify the right of examination and inspection of public records by all citizens of the Commonwealth. In Bogert v. Allentown Housing Authority, 426 Pa. 151 (1967), the court discussed a companion act which requires that public meetings be opened to the public: Act of June 21, 1957, P. L. 392, 65 PS §251, et seq. In language that is equally applicable to both statutes, adopted that same day, Mr. Justice Jones (now Chief Justice) stated that the right of citizens and taxpayers to ascertain what public bodies are doing has been greatly expanded through passage of these acts. He said:

"If the elected members of public bodies are to be subjected to public disclosure of their actions, how much more important that the appointed members of public bodies be required to make such disclosure": page 159.

We are aware that in Mooney v. Temple University Board of Trustees et al., 4 Com. Ct. 392 (1972), the court held that Temple University was not subject to the requirements of the Right to Know statute by virtue of the Temple University-Commonwealth Act of November 30, 1965, P. L. 843, 24 PS §2510-1, et seq. However, the court, in that decision, emphasized the fact that Temple University was still essentially a private body. It was held that the university's basic status as a privately governed university was not

changed, since the university still relied upon private sources for a substantial portion of its income. In addition, a majority of its board of trustees were private citizens, not appointed by any public body. In both of these respects Temple University is very different than the community colleges, which are, in essence, public institutions created by and financed by public bodies and public funds. For all of these reasons, we hold that the Beaver County Community College is an "agency" under the provisions of the Right to Know statute.

The college argues, however, that even if it is subject to the provisions of the Right to Know statute, the individual payroll or salary records of employes are not "public records" which are subject to examination and inspection by appellants. "Public record" is defined in section 1(2) of the Right to Know statute, in part, as being "Any account, voucher or contract dealing with the receipt or disbursement of funds by an agency or its acquisition, use or disposal of services . . ." Certainly, the records of individual employe's salaries are accounts dealing with the disbursement of funds for the use of services. The college argues, however, that such records are exempt from inspection and examination by the following language in section 1(2):

"Provided, That the term 'public records' shall not mean any report, communication or other paper, the publication of which . . . would operate to the prejudice or impairment of a person's reputation or personal security, . . ."

In the stipulation of facts filed, the parties agree that the college "operates under a merit rate increase system as to the salary raises given to its teachers which is based upon performance evaluation by the students, department chairman, the faculty and the college administrators." From this, it is argued by the

college that the publication of individual salaries would be embarrassing and detrimental to the reputation of some teachers who might not fare well in the evaluation. In the first place, there is no evidence in the record before us bearing on this precise question. We are asked to conclude from the mere fact that the college operates on a merit system of pay increases that publication of individual salaries will necessarily impair certain individual's reputations. As stated, there has been no evidence or testimony offered to substantiate the charge that the publication of individual salaries would necessarily result in the impairment of one's reputation. However, even assuming that such a conclusion can be drawn on the basis of this record, we are not unmindful of what Judge Wilkinson said in McMullan v. Wohlgemuth et al., 2 Com. Ct. 183 (1971). In that case Judge Wilkinson issued a preliminary injunction requiring the Department of Welfare to furnish the Philadelphia Newspapers, Inc., with certain limited information concerning the names and addresses of public welfare recipients and the amounts received by them. The same argument was made in that case; that such information would damage the recipients' reputations. Judge Wilkinson indicated, however, that the possible damage to a welfare recipient's reputation and the recipient's right to privacy must both give way to the paramount right of the public to examine the propriety of payments made. The preliminary injunction was subsequently vacated on other grounds by the Supreme Court of Pennsylvania: 444 Pa. 563 (1971). The court, however, did not reach the merits of the case and Chief Justice Bell, in a concurring opinion, indicated that such information should be made public. He said:

"The people of Pennsylvania are entitled to nothing

less than this. Free people and a free land cannot exist if governmental affairs are run in camera."

Therefore, we are of the opinion that the individual salary records of college employes are not exempt under the quoted exclusion. The record does not support the claim that any reputations would be injured or damaged and, furthermore, any possible embarrassment to an individual employe is more than off-set by the public's right to know. We hold, therefore, that the individual salary records of the college employes are "public records" within the provisions of the Right to Know statute.

We would point out that our decision in this case should not be construed in any way as being critical of the trustees, administration• or teachers of the college. They are all persons of integrity and ability. They perform an essential and worthwhile function in a very capable and dedicated manner. Their position in this case appears to have been motivated by the request of the Faculty Senate and a sensitive and understandable concern for the feelings and privacy of those on the faculty. They voluntarily furnished appellants with great amounts of detailed data in an earnest and sincere effort to make their stewardship of their public trust available for public scrutiny.

For all of these reasons, we make the following

### ORDER

Now, May 12, 1972, the appeal of William C. Kegel and Charles R. Moser is sustained. Appellee, Community College of Beaver County is ordered and directed to make available to appellants, at reasonable times, for their examination and inspection, the salary records of individual employes of the college.