## Examination Reports of Insurance Companies

PACKEL, Attorney General, December 28, 1973.—You have requested our opinion with regard to several aspects of section 213 of the Insurance Department Act of May 17, 1921, P. L. 789, as amended, 40 PS §51, ("act"). This section provides that the commissioner shall require companies under the regulatory jurisdiction of the department to keep books and records in a certain manner in order to be able to ascertain whether such companies comply with the provisions of law; and that certain examinations shall be made by the department to ascertain compliance with law and assure protection to policyholders. After providing for the nature and type of departmental examination, the act provides as follows:

"The Insurance Commissioner shall cause to be prepared a report of the examination of any domestic

insurance company, association or exchange immediately upon completion of such examination. He shall submit such report to the domestic insurance company, association or exchange examiner which shall have the privilege of objecting to any part of such report within thirty days from the receipt thereof. In the event any objection shall have been made, the Insurance Commissioner shall grant a hearing to the organization examined before making such report available for public inspection. Thereafter, he may, if he deems it for the interest of the public to do so, publish any such report or the results of any such examination as contained therein in one or more newspapers of the Commonwealth."

Your questions relate to the quoted portion of section 213 and may be summarized as follows:

1. In the past, the department has interpreted section 213 to mean that the commissioner has discretionary authority to determine whether or not the documents comprising an examination report should ever be made available to the public. You believe that such reports should be made public at all times and question whether, in view of the contrary past interpretation, it would be proper for you to make such reports public as a matter of course while retaining only the discretion whether or not to publish them in newspapers.

2. If after a hearing under section 213, you determine that the objections are unfounded, may you immediately release the report to the public or must you wait until an appeal period has expired?

3. You ask whether records which are not public (specifically, examination reports prior to the time a hearing has been conducted) may be made available to a duly authorized committee of the legislature.

4. If an examination discloses that there is an ap-

parent violation of Pennsylvania law, can the department take immediate administrative action against that company or must it wait the 30 days allowed a company to object to the report of examination under section 213?

Our opinions follow and you are hereby advised accordingly.

1. It is our opinion that a report of examination, once it has been finalized, is a public document under the so-called Right to Know Law of June 21, 1957, P. L. 390, as amended, 65 PS §66.1(2).[1] The Right to Know Law does except those records access to which is otherwise prohibited by law or which disclose the institution, progress or result of an investigation. But we do not believe that either of these exceptions applies because section 213 allows, rather than prohibits, the dissemination of such records. Simply allowing a company the right to challenge the validity of an examination report during a certain period *before* the record becomes public, does not remove the status of the report as a public record.

This conclusion is further supported by other provisions of the act. Section 219, 40 PS §57, requires the

---

[1] The courts have looked to the broad intent of the statute rather than to each specific item mentioned: McMullan v. Wohlgemuth, 453 Pa. 147, 158 (1973), reversing 3 Comm. Ct. 574 (1971), holding that welfare rolls are public records but otherwise excepted from disclosure by law; Friedman v. Fumo, 9 Comm. Ct. 609 (1973); opinion of Attorney General no. 20 of 1973, 3 Pa. B. 513, educational records. In Wiley v. Woods, 393 Pa. 341 (1958), the court held that field investigation notes are not public records, but noted that the report made from such notes had been treated as a public record: 393 Pa. at 344. We believe that this is an instructive distinction in regard to this question, where it is the final examination report, after objections have been resolved, and not the preliminary or "investigative" notes which are being held to be a public record.

commissioner to "[P]reserve, in a permanent form, a full record of his proceedings and a concise statement of the condition of each company, association, exchange, society, and order or agency visited or examined." This requirement would be meaningless if that record were to remain locked in files and unavailable to the public. Section 219 additionally requires that the commissioner make an annual report to the General Assembly showing the conditions of the various companies. Furthermore, section 207 of the act, 40 PS §45, provides that copies of all documents filed in the office of the insurance department shall be admitted in evidence in all courts in the Commonwealth when certified by the commissioner. There is no restriction as to confidentiality or even a subpoena requirement. Section 207 is thus consistent with the conclusion that such reports are a public record.

The above analysis also proves that the report is not covered by the "investigation" exception. That exception was designed to protect investigative reports which would then be used in agency or court proceedings, or reports which by their very nature otherwise require confidentiality. But, as Wiley v. Woods, supra, shows, it was not designed to prohibit dissemination of a result of investigation the very purpose of which is to acquire information for the use of the public. Accordingly, we agree with your position and hereby advise that all finalized examination reports are public records under the Right to Know Law and Insurance Department Act, and that your discretion is limited to determining whether or not the results of such reports should be disseminated in the newspapers.

2. Under the language of section 213, it is our opinion that the report of examination becomes a

public record as soon, after hearing, as the department resolves, to its satisfaction, the objections filed by any company. If the company believes that the dissemination is harmful, it can seek review of the department's decision by original action or appeal,[2] attended by a request for appropriate interlocutory relief.[3]

3. A duly constituted legislative committee should, of course, be given any record which is a public record or which is not otherwise prohibited by law, and you should, as we are certain you do, cooperate with such a committee so that it may appropriately carry on its legal functions. Compare section 502 of the Administrative Code of April 9, 1929, P. L. 177, as amended, 71 PS §182. If, however, such a committee

---

[2] It is unclear whether such a determination constitutes an administrative adjudication under the Administrative Agency Law of June 4, 1945, P. L. 1388, as amended, 71 PS §1710.1, et seq. Section 2(a) of that act, 71 PS §1710.2, defines an adjudication as a final determination or ruling by an agency "affecting personal or property rights, privileges, immunities or obligations of any or all of the parties to the proceeding in which the adjudication is made." There are no reported decisions on the question of whether an objection hearing under section 213 and the decision thereon come within the Administrative Agency Law, and the question is not free from doubt. See Pittsburgh v. Insurance Department of Pennsylvania, 448 Pa. 466 (1972), reversing 4 Comm. Ct. 262 (1971); Fricchione v. Department of Education, 4 Comm. Ct. 288 (1972). We need not, however, resolve that question. Because of the uncertainty, we hereby advise that you conduct hearings under section 213 in accordance with the Administrative Agency Law so that, in the event of a test appeal, the Commonwealth Court will be able to face the merits and will not have to remand unnecessarily for the holding of a proper hearing. We note that you have proposed regulations to expedite such hearings: 3 Pa. B. 2732.

[3] See section 43 of the Administrative Agency Law, 71 PS §710.43, regarding the power of the Commonwealth Court to issue a supersedeas.

requests a report of examination which has not yet been finalized and is, therefore, not public, we believe, and it is our opinion, that you should require a subpoena from such committee and specifically advise such committee of the confidential nature of such material so that it will not make it public to the detriment of the company involved. Once the subpoena has been properly issued and is otherwise legal and proper, you should obey it: Constitution of Pennsylvania, art. II, sec. 11; Act of June 13, 1842, P. L. 491, 46 PS §61; Crimes Code of December 6, 1972, P. L. 1068, §1 (No. 334), 18 PS §5110.

4. The department is given broad power to take administrative action against insurance companies for violations of law, whenever they come to its attention.[4] In serious cases, the department is given power to suspend an insurance company under section 502 of the act, 40 PS §202, under the circumstances there set forth, all of which evince a danger to the public welfare if the company is allowed to continue to operate.[5] One method of ascertaining the condition

---

[4] See, e.g., section 639 of the Insurance Department Law, as amended, 40 PS §279; §§337.3, 350, 353 and 354 of the Insurance Company Law of 1921, as amended, 40 PS §§459.3, 475, 477a, 477b; §§7, 9 and 10 of The Insurance Unfair Practices Act of June 5, 1947, P. L. 445, 40 PS §§1157, 1159-1160.

[5] Among the grounds for suspension are insolvency, refusal to obey the laws of the Commonwealth, or where the company "is found, after an examination, to be in such condition that its further transaction of business will be hazardous to its policyholders, or to its creditors, or to the public." Mere technical violations are not sufficient for suspension: Commonwealth ex rel. Maxwell v. Safeguard Mutual Insurance Co., 91 Dauph. 305, 341 (1969). For the financial damage such a company may do to the public, see Commonwealth ex rel. Kelly v. Commonwealth Mutual Insurance Co., 450 Pa. 177 (1973), reversing 94 Dauph. 280 (1972).

of a company is through the examination required in section 213. Since the principal purpose of the examination is to determine the nature of the company's operations and whether the company should remain in business, Commonwealth ex rel. v. Equitable Casualty and Surety Co., 306 Pa. 19, 24 (1931), it would be anomalous to require the department to wait until even the 30-day period to file objections has passed, should the report disclose immediate serious problems. During that time, if harm is being done to the public, policyholders and creditors, the harm would not lessen but would increase. Section 213 does not, however, require the same delay before any information of facts revealed during the course of an examination can be used as a basis for administrative action by the department.

It is, therefore, our opinion that section 213 may operate independently of other statutory provisions empowering the department to take administrative action against insurance companies. If information is found during the course of an examination which could be a basis for formal administrative action, the department may, at its discretion, immediately initiate appropriate action without waiting for the 30-day period to elapse. In pursuing such action, the department must stay within the provisions of section 213 by insuring that the examination report document itself is not made public prior to the elapse of the 30-day period. The company is protected by the fact that the department, regardless of the report of examination, has the burden to prove its case. See Commonwealth ex rel. Maxwell v. Safeguard Mutual Insurance Co., 91 Dauph. 305, 315-316 (1969), 92 Dauph. 307, 309-310 (1970).