## Marvel v. Dalrymple

*John M. Gallagher*, for appellant.
*Eugene H. Evans*, for appellees.

LIPPINCOTT, *J.*, May 19, 1976—This is an appeal by a Radnor Township police officer from the refusal by appellees, members of the Radnor Township Civil Service Commission, to permit him to examine certain records pertaining to the promotional process to the position of sergeant conducted during March 1974. That process consisted of four parts: (1) A written examination prepared by an outside agency; (2) an oral examination before the members of the Civil Service Commission and a guest during which certain evaluations were recorded; (3) a review of service ratings by superior officers; and (4) a review of the applicant's past experience, training, and education.

Appellant was not selected for promotion and therefore requested access to all of the examinations and records considered by appellees, asserting that he was entitled to the same under the "Right-to-Know Law."[1] Appellees contend that the documents sought by appellant do not fall within

---

1. Act of June 21, 1957, P.L. 390, 65 P.S. §66.1 et seq.

the provisions of the Right-to-Know Law, or if they do, they come within exceptions provided by that act.[2] Since this is apparently a case of first impression, we believe a careful analysis is required.

## I

Appellees first contend that the documents sought by appellant do not fall within the class of records discoverable under the act. Prior to the enactment of the Right-to-Know Law, the right of a citizen to the examination and inspection of public records was governed by either express statutory grant or by common law principles and was the subject of much confusion.[3]

Our courts had long held that where, by statute, such as the Civil Service Act of August 5, 1941, P.L. 752, 71 P.S. §741.1 et seq., records were open to public inspection, the right to examination need be sustained by no particular reason and could be exercised out of idle curiosity: Butcher v. Phila. Civil Serv. Comm., 163 Pa. Superior Ct. 343, 345, 61 A. 2d 367 (1948).

In recognition of the public's right to know, "[u]ndoubtedly, the legislature intended through the medium of the statute a clarification of the right

---

2. We previously ruled in an opinion by deFuria, *J.*, filed on April 1, 1975, that the petition sufficiently pleaded a right to inspect under the Right-to-Know Law, but that a hearing should be held to decide whether the papers sought to be examined constituted a "public record" or not and whether their disclosure was excepted by the act. Thereafter, several hearings were held by Lippincott, *J.*, and efforts made to resolve the matter amicably.

3. See the excellent discussion in Wiley v. Woods, 393 Pa. 341, 349, 141 A. 2d 844, at n. 8 (1958).

of examination and inspection of public records by all citizens, regardless of their interest or the extent or nature thereof." Wiley v. Woods, 393 Pa. 341, 349-350, 141 A. 2d 844, 849 (1958). Accordingly, the act provided that: "Every public record of an agency shall, at reasonable times, be open for examination and inspection by any citizen of the Commonwealth of Pennsylvania." 65 P.S. §66.2. Thus, the Right-to-Know Law clarified the extent of the public's right to know and defined what was encompassed within that right.

Section 1 of the act defines "a public record" as "any minute, order or decision by an agency fixing the personal or property rights, privileges, immunities, duties, or obligations of any person or group of persons . . ." 65 P.S. §66.1(2).

Our appellate courts have given a broad interpretation to the requirements of the act, particularly this definition of a "public record." Thus, in Friedman v. Fumo, 9 Pa. Commonwealth Ct. 609, 309 A. 2d 75 (1973), the Commonwealth Court held that a list of names of persons who had taken an examination for qualification as certified public accountants came within the definition of "public record." Also, in Westmoreland Co. B. of A.A. v. Montgomery, 14 Pa. Commonwealth Ct. 50, 321 A. 2d 660 (1974), the court held that the detailed building record side of property record cards maintained by a county board for assessment and revision of taxes, which contained information pertaining to construction specifications, together with dwelling and commercial computations relating to the building or property involved, was a "public record" as defined by the Right-to-Know Law, in view of the fact that such record "reflects factual determinations by the Board which directly affect

the valuation of the building for assessment purposes." In Westmoreland the court went on to state: "As such, this information satisfies the above definition of a public record, in that it clearly represents decisions 'by an agency fixing the personal or property rights, . . . duties, or obligations of [a] person or group of persons . . .'" Again, in Young v. Armstrong School District, 21 Pa. Commonwealth Ct. 203, 344 A. 2d 738 (1975), the court held that a list of names and addresses of kindergarten children in a school district was subject to the disclosure requirements under the act. The Commonwealth Court arrived at this decision by finding that such a list would provide a factual basis for determining the location of the schools which the children would attend and other relevant determinations required to be made by the school district. Furthermore, in Kanzelmeyer v. Eger, 16 Pa. Commonwealth Ct. 495, 329 A. 2d 307 (1974), the court held teacher attendance cards with possible disciplinary notations accessible under the act. The Attorney General of Pennsylvania has also broadly interpreted the act in determining what constitutes a "public record."[4]

---

4. "The courts have looked to the broad intent of the statute rather than to each specific item mentioned: McMullan v. Wohlgemuth, 453 Pa. 147, 158 (1973), reversing 3 Comm. Ct. 574 (1971), holding that welfare rolls are public records but otherwise excepted from disclosure by law; Friedman v. Fumo, 9 Comm. Ct. 609 (1973); opinion of Attorney General no. 20 of 1973, 3 Pa. B. 513, educational records. In Wiley v. Woods, 393 Pa. 341 (1958), the court held that field investigation notes are not public records, but noted that the report made from such notes had been treated as a public record: 393 Pa. at 344. We believe that this is an instructive distinction in regard to this

Our examination of the statutory definition of "public record" and appellate interpretations of that definition, together with the Civil Service Commission's statutory duty,[5] convinces us that the records sought by appellant satisfy the definition and are therefore discoverable under the Right-to-Know Law.

## II

Appellees contend that the documents sought fall within the exception of the Right-to-Know Law which provides that public records shall not include

---

question, where it is the final examination report, after objections have been resolved, and not the preliminary or 'investigative' notes which are being held to be a public record." Examination Reports of Insurance Co., 64 D. & C. 2d 627, 629, n. 1 (1973).

5. In recognition of the desirability and necessity of according to citizens the right to inquire into the operation of the government of the Commonwealth, its component public agencies and political subdivisions and the desire to foster a well-informed public and to promote candidness in civil service examinations the legislature enacted the following provision governing civil service actions in first class townships:

"The commission shall keep minutes of its proceedings and records of examinations and other official actions. All recommendations of applicants for appointment received by the commission shall be kept and preserved for a period of five years and *all such records* and all written causes of removal filed with the commission shall be subject to reasonable regulation and *open to public inspection.* 1931, June 24, P.L. 1206, art. VI, §631, added 1949, May 27, P.L. 1955, §20." 53 P.S. §55631 (Emphasis supplied.)

Radnor Township has also adopted the following regulation pursuant to this legislation:

information ". . . which would operate to the prejudice or impairment of a person's reputation . . ."[6]

While we realize that this exception cannot be equated with an individual's right to confidentiality: Young v. Armstrong School District, supra; it is our view that sufficient evidence was presented by appellees indicating that some of the papers[7] herein sought to be examined and inspected are within a category of records which would be intrinsically harmful to the reputation of the participants in the examination (including other applicants, the superior officers and the Civil Service Commission members). Such records are therefore excepted and excluded from the definition of "public records" under the statute.

---

"The secretary of the commission shall record in the minutes the time and place of each meeting of the commission and the names of the members present; all proceedings and official acts of the commission, *including records of examinations*; the votes given by members except when the action is unanimous, and, when requested, commission member's dissent, with his reasons; and such other information as the commission may direct. The secretary shall cause the minutes to be written up forthwith and presented for approval or amendment at the next regular meeting. The minutes, or a true copy thereof, certified by the commission, or by a majority thereof, *shall be open with other records of the commission as provided by law.*" (Emphasis supplied.) Rules and Regulations of the Civil Service Commission of Radnor Township, February 8, 1946, as amended, §305.

6. 65 P.S. §66.1(2).

7. These papers include the rating sheets completed by members of the Commission and the guest examiner in connection with the oral examination, evaluations by superiors specifically for this promotional examination, and physicians' reports on the fitness of each of the applicants for promotion.

Furthermore, we feel that it is in the public interest to keep evaluations by superior officers confidential. If a superior knew that the applicant he is rating would eventually learn his evaluation, he would be extremely reluctant to provide a fair and candid appraisal. In addition, if an applicant learned of his rating, such knowledge could severely impair the relationship between the superior and the applicant in future duties. The result would clearly affect the morale and create disciplinary problems in the police force.

While this exception to the Right-to-Know Law, in our opinion, exempts appellant's request for the records noted, we might add that the exception for investigatory materials[8] is also persuasive, since it can well be argued that the commission's solicitation of reports from superior officers was simply investigatory in nature.

## III

Appellant has also requested his own as well as all other year-of-service ratings. These ratings are issued biannually and do not form a part of the consideration for promotion under the Civil Service Regulations. It is clear that these records sought by appellant are not public records and do not fix any personal or property rights, privileges, immunities, duties or obligations of any person or persons. Accordingly, they are not subject to examination and disclosure under the Right-to-Know Law. *See West*

---

8. ". . . 'public records' shall not mean any . . . communication . . . which would disclose the . . . result of an investigation undertaken by an agency . . ." 65 P.S. §66.1(2).

Shore School District v. Homick, 23 Pa. Commonwealth Ct. 615, 353 A. 2d 93 (1976).

## IV

We do note, in addition, that two of appellant's requests are extremely broad in asking for all other work papers and notes. As was stated in Mooney v. Temple U. Bd. of Trustees, 448 Pa. 424, 292 A. 2d 395, n. 8 (1972): ". . . The Legislature's use of the singular preceded by 'any' indicates clearly its intention to require that requests for inspection be specific and particular seeking disclosure of named documents or records rather than broad and unlimited requests for undefined bodies of documents or records . . . ."

For the above reasons, we enter the following order with respect to the various documents sought to be examined:

## ORDER

Now, May 19, 1976, it is hereby ordered and directed that appellees, Thomas G. Dalrymple, Robert J. DiJoseph, and James A. Drobile, representing the Civil Service Commission of Radnor Township, make available to appellant, James L. Marvel, the following records:

1. A copy of the examination booklet used in the March 1974 Civil Service written promotional examination for sergeant.

2. Officer Marvel's own written examination answer paper used in the March 1974 Civil Service written promotional examination for sergeant.

3. The written examination answer papers of all other persons who took the March 1974 Civil Service written promotional examination for sergeant.

4. Officer Marvel's composite score in the March 1974 Civil Service promotional examination for sergeant.

5. The composite scores of all other participants in the March 1974 Civil Service promotional examination for sergeant.

6. The individual numerical scores of each part of the March 1974 Civil Service promotional examination for sergeant of Officer Marvel.

7. The individual numerical scores of each part of the March 1974 Civil Service promotional examination for sergeant of each of the participants.

Judge Labrum did not participate.