Norman O. Aamodt and Marjorie M. Aamodt, Petitioners *v.* Commonwealth of Pennsylvania, Department of Health, Respondent.

Submitted on briefs November 12, 1985, to President Judge CRUMLISH, JR., Judge COLINS and Senior Judge BARBIERI, sitting as a panel of three.

*Norman O. Aamodt* and *Marjorie M. Aamodt,* petitioners, for themselves.

*Ruth E. Granfors,* Assistant Counsel, with her, *Ruth M. Siegel,* Chief Counsel, for respondent.

OPINION BY SENIOR JUDGE BARBIERI, January 6, 1986:

Norman O. Aamodt and Marjorie M. Aamodt, Petitioners, appeal here a decision of the Department of Health (Department) which denied their request for information under the Right to Know Act (Act), Act of June 21, 1957, P.L. 390, *as amended,* 65 P.S. §§66.1-66.4. The Department denied their request on the

basis that the information desired did not fall within the right to know law's definition of "public record." We affirm.

The following facts are pertinent. Following the March 28, 1979 accident at the Unit 2 reactor of the Three Mile Island Nuclear Generating Station (TMI), the Department instituted a study on the effects of the TMI accident on pregnancy outcomes in the vicinity of TMI. In the course of this study, the Department collected information on pregnancy outcomes for an area within a ten-mile radius of TMI for the period of 1976 through 1984. The Department assured each of the participants in its study that all identifying data would be confidential information and that no information would be released to persons other than "collaborating researchers" without the written consent of the individual involved. By letter dated January 5, 1985, Petitioners requested from the Department the "raw data" from its TMI pregnancy study. The Department denied Petitioners' request for the TMI pregnancy study raw data as it contained individual identifiable data and because of the promise of confidentiality made by the Department to the study participants. The Department did, however, offer to provide the Petitioners with a statistical abstract of that data once its final report was issued. It is from the denial of their request for access to the TMI pregnancy study "raw data" that Petitioners now appeal.

In this appeal Petitioners contend that (1) the "raw data" obtained by the Department during the course of its TMI pregnancy study constitutes a "public record" under Section 1(2) of the Act, 65 P.S. §66.1(2) which is subject to disclosure under Section 2 of the Act, 65 P.S. §66.2; and (2) that the Department acted arbitrarily and capriciously when it refused to acknowledge Petitioners as "collaborating research-

ers'' and denied them access to the confidential data of the TMI pregnancy study. We shall address these issues in the order stated, duly noting that our scope of review under the Act is limited to determining whether the Department's denial of the request for the desired information was for just and proper cause. Section 4 of the Act, 65 P.S. §66.4.

Initially, Petitioners argue that the ''raw data'' which they desire is a ''public record'' as defined by 65 P.S. §66.1(2). That section defines ''public record'' as follows:

> (2) 'Public Record.' Any account, voucher or contract dealing with the receipt or disbursement of funds by an agency or its acquisition, use or disposal of services or of supplies, materials, equipment or other property and *any minute, order or decision by an agency fixing the personal or property rights, privileges, immunities, duties or obligations of any person or group of persons: Provided, That the term 'public records' shall not mean any report, communication or other paper, the publication of which would disclose the institution, progress or result of an investigation undertaken by an agency in the performance of its official duties.* . . . or which would result in the loss by the Commonwealth or any of its political subdivisions or commissions or State or municipal authorities of Federal funds, excepting therefrom however the record of any conviction for any criminal act. (Emphasis added.)

While Petitioners never precisely define what they mean by their use of the term ''raw data,'' we shall construe it to mean, as did the Department, the original surveys which the Department had solicited from the volunteers who engaged in the TMI pregnancy study.

. These facts are similar to those in *Wiley v. Woods,* 393 Pa. 341, 141 A.2d 844 (1958), in which the Pennsylvania Supreme Court held that a City Planning Department staff member's field notes regarding a survey taken of a street in connection with a rezoning plan were not disclosable under the Act in that they did not constitute a "public record." The Court based its determination upon the exception contained in the Act's definition of a "public record," of papers the publication of which would disclose the institution, progress or result of an investigation undertaken by an agency in the performance of its official duties. The Court specifically held that notes of a field investigation are "clearly not embraced within the statute's definition of 'public records' and are within the category of records excepted and excluded from the definition of 'public records.'" *Id.* at 347-348, 141 A.2d at 848. Therefore, the Court concluded, the appellant had no right under the Act to examine the field investigation notes. This Court has recently followed the *Wiley* decision where we held that a private applicant's investigative product in conjunction with its application for funding to a Commonwealth agency is not amenable to another citizen's scrutiny under the Act. *See A. R. Building Company v. Pennsylvania Housing Finance Agency,* 93 Pa. Commonwealth Ct. 140, 500 A.2d 943 (1985).

We are convinced that the information which Petitioners seek falls into the same category as the field investigation notes in *Wiley* and outside of the Act's definition of "public record." Thus, we note that the "raw data" which the Department used in producing its study is neither a minute, order or decision affecting personal or property rights nor is it an account, voucher or contract dealing with the receipt or disbursement of funds within the statutory definition of a "public record" subject to disclosure. We

also recognize that federal regulations require the protection of the confidentiality of information gathered from human subjects as well as the protection of their right to privacy as a condition precedent to the receipt of federal funds for human research projects. *See* 45 C.F.R. §46.111(a)(7). The statutory definition of "public record," as quoted above, also exempts from its coverage any document or information which would cause the Commonwealth or any of its instrumentalities to lose federal funds. Therefore, we agree with the Department's contention that the information sought by the Petitioners is not required to be disclosed under the Act and it was for just and proper cause that their request for this information was denied.

Petitioners' other contention is that the Department had agreed to share this information with "collaborating researchers" which was clearly indicated on the consent form which the Department had each of the survey participants sign. Petitioners argue that they are "collaborating researchers" and entitled to that confidential information. We disagree.

To be a "collaborating researcher," Petitioners would have to be working together with the Department in a joint project. The term "collaboration" itself is defined as "the act of working together in a joint project." Black's Law Dictionary, 5th Ed. (1979) 236. The Department's project is to determine what impact, if any, the 1979 TMI accident had upon pregnancy outcomes in the area of TMI for the purpose of emergency planning. Petitioners' purpose is far different. They specifically desire the confidential information to support their efforts to stop the restart of the TMI Unit I reactor. Petitioners' brief at 6. Also, the act of collaboration requires the agreement of both parties to work together, it cannot be a unilateral decision of one of the parties against the oppo-

sition of the other. Collaboration implies cooperation between the parties involved. *See* Webster's New Collegiate Dictionary (1981) 216. There is no evidence presented that the Department ever consented to work with Petitioners on any project; indeed, the evidence is clearly to the contrary. Accordingly, we must agree with the Department that Petitioners do not fall within the scope of "collaborating researchers" with whom the Department could share its confidential information under the terms of its consent form. There was no abuse of discretion on the part of the Department to deny the Petitioners this courtesy in view of their vastly different purposes for desiring this information.

Having found the Department's decision to deny the Petitioners the desired information to be for just and proper cause under the Act and that the Department's decision to deny them the status of "collaborating researcher" not to be an abuse of discretion, we shall affirm the Department's decision.

### ORDER

Now, January 6, 1986, the determination of the Department of Health, Manager of Three Mile Island Related Health Studies, dated January 17, 1985, which denied Norman O. Aamodt and Marjorie M. Aamodt access to confidential research information pertaining to the Department's Three Mile Island Pregnancy Outcome Study, is hereby affirmed.

Judge PALLADINO did not participate in the decision in this case.