In Re: Petition for Enforcement of a Subpoena to American Bank and Trust Company of Pennsylvania. R. H. Bomersbach Associates, Inc. and Coachman Clubs International, Ltd., Intervenors.

Argued October 4, 1974, before Judge BLATT.

*Martin H. Aussenberg*, Assistant Attorney General, for petitioners.

*Lewis H. Markowitz*, with him *Richard C. Fox*, and *Markowitz, Kagen & Griffith*, for intervenors.

MEMORANDUM OPINION AND ORDER BY JUDGE BLATT, January 30, 1975:

The Pennsylvania Securities Commission (Commission) has filed a petition to enforce a subpoena, served upon the American Bank and Trust Company of Pennsylvania (Bank), to produce records pertaining to the accounts of two depositors. The depositors, R. H. Bomersbach Associates, Inc. and Coachman Clubs International, Ltd. (Intervenors) were permitted to intervene on their own behalf, and have raised five basic arguments against enforcement: 1) The subpoena was not issued within the statutory authority of the Commission's investigatory powers; 2) The subpoena was not authorized and signed

by the Commission as a whole; 3) The subpoena violates the Intervenors' rights against unreasonable searches and seizures as protected by the Fourth Amendment to the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution; 4) The subpoena cannot be evaluated for relevance and materiality because the scope of the investigation has not been defined; and 5) The subpoena was issued because of a bias against Robert H. Bomersbach rather than pursuant to a good faith investigation.

Hearings were held on September 16, 1974 and October 4, 1974, and after examining the record and briefs, the Court has determined that the Intervenors' arguments lack merit. The subpoena must, therefore, be enforced.

The Commission's investigatory power emanates from The Pennsylvania Securities Act of 1972,[1] which states:

"The Commission in its discretion: (i) May make such public or private investigations within or without this state as it deems necessary to determine whether any person has violated or is about to violate this act or any rule or order hereunder. . . ." Section 510 (a) of The Pennsylvania Securities Act of 1972, 70 P.S. §1-510 (a), 510 (a), (Supp. 1974-1975).

Section 510 (b) of the act, 70 P.S. §1-510 (b), (Supp. 1974-1975) gives the Commission subpoena power for the purposes of such investigations. The Intervenors argue, however, that absent a preliminary showing that violation or potential violation exists, the investigation and hence

---

1. The Act of December 5, 1972, P.L. ——, (Act No. 284), 70 P. S. §1-101 et seq., (Supp. 1974-1975), rather than The Pennsylvania Securities Act, Act of June 24, 1939, P.L. 748, *as amended*, because an investigation is not a proceeding within the scope of Section 704 (a) of The Pennsylvania Securities Act of 1972, 70 P.S. §1-704 (a) (Supp. 1974-1975). That section preserves the law of the prior act to govern pending suits, actions, prosecutions or proceedings which may be initiated on the basis of facts arising before January 1, 1973, the effective date of the 1972 Act. This investigation arose after the effective date of the 1972 Act.

the subpoenas cannot be enforced within statutory authority. We may quickly dispose of the Intervenors' argument after examining, as we must,[2] the investigatory authority of the United States Securities and Exchange Commission under Section 21 of the Securities Exchange Act of 1934, 15 U.S.C. §78u(a). The federal statute, nearly identical to the corresponding Pennsylvania Act, is construed to accord the Commission complete discretion to undertake investigations. That discretion may be exercised on the *mere suspicion* that the act is being violated or even on the mere desire to gain assurance that it is not. *See, SEC v. Brigadoon Scotch Distributing Co.*, 480 F.2d 1047 (2nd Cir. 1973), *Cert. denied*, 415 U.S. 915 (1974); *SEC v. Wall Street Transcript Corp.*, 422 F.2d 1371 (2nd Cir. 1970), *Cert. denied*, 398 U.S. 958 (1970). In addition, the law presumes the validity of actions taken by public officials until the contrary has been shown. *See, Wheatcroft v. Schmid*, 8 Pa. Commonwealth Ct. 1, 301 A.2d 377 (1973). Here the Intervenors have failed to show that the Commission acted beyond its statutory authority. The subpoena, therefore, can fail only upon a showing of its own invalidity rather than of the invalidity of the investigation as a whole.

As to the invalidity of the subpoena itself, the Intervenors argue that the subpoena lacks proper authorization and execution by the full Commission because the only signature appearing on its face is that of the Secretary of the Commission. This argument fails also, for the Secretary's signature evidences not his personal action but action by the Commission as a whole, as revealed in minutes of a meeting held on January 22, 1974 where the

---

2. The Pennsylvania Securities Act of 1972 "shall be so construed as to effectuate its general purpose to make uniform the law of those states which enact the 'Uniform Securities Act' and to coordinate the interpretation and administration of this act with related Federal regulation." Section 703 of the Pennsylvania Securities Act of 1972, 70 P.S. §1-703, (Supp. 1974-1975).

issuance of subpoenas for this investigation was authorized. Again, the regularity of such action is presumed until evidence to the contrary is presented. *Wheatcroft v. Schmid, supra.* No such contrary evidence can be found here.

Next the Intervenors assert that enforcement of the instant subpoena will violate their constitutional rights against unreasonable searches and seizures. *Annenberg v. Roberts,* 333 Pa. 203, 2 A.2d 612 (1938). Without deciding Intervenors' standing to assert such a right as to the records of a bank, *Compare Shelby v. Second National Bank of Uniontown,* 19 Pa. D.&C. 202, (1933) with *Stark v. Connally,* 347 F. Supp. 1242 (N.D. Cal., 1972), the Court rejects this argument also. The test in search and seizure cases is one of reasonableness. The Intervenors seem to construe this concept as something akin to probable cause. The Federal courts, however, reject this construction. Thus, "for purposes of the fourth amendment's probable cause requirement it is sufficient if an agency shows that an investigation is within its authority and the materials requested are reasonably relevant. . . . [A]n agency need not˙demonstrate facts showing either the probability of coverage under the statute or the likelihood of violation of the statute to secure enforcement of a subpoena." *SEC v. Brigadoon Scotch Distributing, Co., supra,* at 1055. *See United States v. Morton Salt Co.,* 338 U.S. 632 (1950) ; *Oklahoma Press Publishing Co. v. Walling,* 327 U.S. 186 (1946). We must, therefore, examine the subpoena for materiality and relevance.

Such an examination, argue the Intervenors, cannot be made because the scope of the instant investigation is not defined so as to enable determination of relevance and materiality. As the Court earlier recognized, the statute authorizes investigations broad in scope with the presumption arising that the Commission's investigations fall within that authority until the contrary is shown. Here the Commission acts within its authority

and has, indeed, limited its investigation to specific parties as shown by the case assignment form directed to the Securities' Examiner, William Seipt, along with the Commission's minutes authorizing the issuance of the subpoenas. These focus specifically upon "Bomersbach" and "Coachman Clubs, Coachman Clubs International, Ltd., and R. H. Bombersbach Associates, Ltd." Having so focused the investigatory power of the Commission on these parties, a basis from which to determine relevance and materiality is, we believe, sufficiently established. The subpoena directs a request for a narrow class of documents: "copies of all deposit slips for and checks deposited in or drawn on the following accounts . . . ", then naming the accounts of the Intervenors. When asked the purpose of examining bank records, Mr. Seipt, the Securities Examiner assigned to the case, stated:

"It was to find things that were relevant regarding the sale of securities. There would be, for instance, the use of funds that went into an account from which you knew investors' funds had been placed and it would be to determine whether all of the investors had been located in the case the records of the company were not available in some other form. It would be to find out whether the facts as represented both by the investors and by the company were accurate. It was a type of evidence that in itself was hard evidence, the fact that a person puts a check in, perhaps annotates the check with something like stock for such and such a company or for some other purpose."

The testimony of Mr. Seipt, who has undertaken numerous securities investigations, satisfies the Court that the requested documents are material to this investigation and relevant to the types of data the Commission is authorized to investigate.

Finally, the Intervenors argue that the Commission issued the subpoena to harass Robert H. Bomersbach as

a result of a personal bias against him, and is, therefore, unlawful. Subpoena power can, of course, become the instrument of oppression and injustice. *Endicott Johnson Corp. v. Perkins,* 317 U.S. 501 (1943), (MURPHY, J., dissenting). And it is for the Court, on a petition to enforce, to determine whether the power is being so used. *Shasta Minerals & Chemicals Co. v. SEC,* 328 F.2d 285 (10th Cir. 1964). The Intervenors suggest that such bias is shown by Mr. Seipt's unsubstantiated suspicions, given as opinions and conclusions, that violations of the act may have taken place. It is, however, this very kind of suspicion which authorizes the Commission to conduct investigations. After examining the evidence, therefore, the Court does not believe that bias has motivated the Commission's action with respect to Mr. Bomersbach and organizations with which he may be associated.

In conclusion, therefore, the Court finds that the subpoena in question was lawfully authorized and executed, and that it reflects a reasonable request for materials relevant to an investigation that is not motivated by an undue prejudice against the Intervenors and associated individuals. The Court, therefore, issues the following

## ORDER

AND NOW this 30th day of January, 1975, the American Bank and Trust Co. of Pennsylvania is hereby directed to produce and deliver to the Pennsylvania Securities Commission the documentary evidence demanded by the subpoena issued March 12, 1974, the subject of this enforcement proceeding. The Respondent Bank or its counsel, shall contact counsel for the Commission within five days of the date of this Order to establish a date and time for delivery of the documents, and such delivery shall not occur later than 4:00 P.M. on the 14th day of February, 1975.