**Ledcke v. County of Lackawanna**

C.P. of Lackawanna County, No. 12 CV 6701.

*Shawn Michael Ledcke*, pro se petitioner.
*Donald J. Frederickson, Jr.*, for respondent.

NEALON, *J.*, February 7, 2013—Petitioner, Shawn Michael Ledcke ("Ledcke"), has filed a petition seeking to enforce a final determination of the Office of Open Records ("OOR") relative to records and materials in the custody of the Lackawanna County Prison that the OOR found to be discoverable under the Pennsylvania Right-to-Know Law ("RTKL"), 65 P.S. §§ 67.101-67.3104. (Docket Entry No. 1). Defendant, County of Lackawanna

("the county"), filed a response to Ledcke's petition, and an evidentiary hearing was conducted on January 31, 2013. (Docket Entry No. 6). For the reasons set forth below, Ledcke's petition to enforce will be dismissed as moot and his request for an award of fees and expenses will be denied.

## Factual Background

On April 9, 2012, Ledcke submitted a RTKL request to the county seeking fifteen itemized categories of digital, paper and electronic records pertaining to his incarceration at the Lackawanna County Prison between June 15, 2010, and September 10, 2010.[1] More specifically, Ledcke demanded access to records concerning an incident in which he was involved at the county prison on August 9, 2010, as well as his subsequent disciplinary hearing on August 19, 2010. (*See* Ledcke letter to OOR appeals officer, Kyle Applegate, Esq., dated 9/27/12, pp.2-4). Ledcke's RTKL request also sought copies of his "medical records" and "psycology (*sic*) & psyciatrist (*sic*) records"

---

1. Ledcke was indicted for various firearms offenses in the United States District Court for the Northern District of Illinois after "Ledcke purchased approximately 43 firearms in Ohio and sold them in Chicago to reputed members of street gangs and the Mexican mafia." *U.S. v. Ledcke*, 231 Fed. Appx. 507, 508, (7th Cir. 2007). *cert. denied*, 553 U.S. 1006 (2008). Ledcke pled guilty to the firearms charges, and the federal district court sentenced him to ten years imprisonment after imposing enhancements to Ledcke's base offense level score under the sentencing guidelines due to his 2000 conviction for reckless homicide and 1996 conviction for aggravated battery. *Id.* at 508-509. Ledcke appealed his sentence, but the United States Court of Appeals for the Seventh Circuit affirmed Ledcke's sentence on July 23, 2007. *Id.* at 512. There is no indication in either the administrative record of the OOR or the court file maintained by the Clerk of Judicial Records regarding the circumstances that led to Ledcke's incarceration at the Lackawanna County Prison in the summer of 2010 while he was still serving his federal sentence.

that were "developed at L.C.P. [Lackawanna County Prison] between 6/1/10 & 9/30/10."[2] (*Id.* at p.3).

The county did not respond to Ledcke's RTKL request, nor did it request an extension of time within which to answer pursuant to 65 P.S. § 67.902, as a result of which Ledcke's request was deemed denied under section 901 of the RTKL. *See* 65 P.S. § 67.901 ("The time for response shall not exceed five business days from the date the written request is received by the open-records officer for an agency. If the agency fails to send the response within five business days of receipt of the written request for access, the written request for access shall be deemed denied."). On May 7, 2012, Ledcke filed an appeal of the county's deemed denial with the OOR in accordance with

_____

2. On December 12, 2011, Ledcke filed a *pro se* lawsuit against the Pennsylvania Department of Corrections, the Lackawanna County Sheriff, the Lackawanna County Prison, and the Prison Warden, Robert McMillian, in the United States District Court for the Middle District of Pennsylvania seeking "wide ranging materials, including audio and videotapes, as well as production of documents," pursuant to the RTKL and the federal Freedom of Information and Privacy Acts, 5 U.S.C. §§551-552a. *Ledcke v. Pennsylvania Dept. of Corrections*, 2012 WL 716052, at *1 (M.D. Pa. 2012). On February 3, 2012, U.S. Magistrate Judge Martin C. Carlson issued a Report and Recommendation concluding that Ledcke's action should be dismissed, without further leave to amend his complaint, since: (1) the Freedom of Information and Privacy Acts "only applied to federal agencies and offices;" (2) the appropriate remedy for denial of a RTKL "request is to appeal that denial in state court;" (3) the Eleventh Amendment to the U.S. Constitution "precludes persons from pursing claims against state agencies and officials under Pennsylvania's Right-To-Know Law;" and (4) diversity of citizenship jurisdiction did not exist under 28 U.S.C. § 1332(a)(1) in that the amount in controversy did not exceed $75,000.00. *Id.* at * 4-5. On March 5, 2012, U.S. District Judge John E. Jones III adopted the Report and Recommendation dated February 3, 2012, and dismissed Ledcke's suit. *See Ledcke v. Pennsylvania Dept. of Corrections*. 2012 WL 718591, at * 2 (M.D. Pa. 2012). Thirty five days later, Ledcke submitted his RTKL request to the County.

Section 1101 of the RTKL. *See* 65 P.S. § 67.1101(a)(1)("If a written request for access to a record is...deemed denied, the requester may file an appeal with the Office of Open Records...within 15 business days of a deemed denial."). Upon receipt of Ledcke's appeal, the OOR Appeals Officer "invited both parties to supplement the record," but "[n] either party did so." (OOR Final Determination dated 6/6/12 at p.2).

On June 6, 2012, the OOR issued a Final Determination granting Ledcke's appeal in part and denying it in part. Noting that local agency records are presumed to be public and accessible unless they are exempt by federal or state law, regulation or decree, *see* 65 P.S. § 67.305, the appeals officer found "that the county did not meet its burden under the RTKL of proving that the requested records are exempt from disclosure." (*Id.* at p.3 (citing 65 P.S. § 67.708(a)(1)). Nevertheless, the OOR concluded that "[n]otwithstanding the county's failure to meet its burden of proof under the RTKL, [Ledcke's] medical records are exempt from disclosure under the Health Insurance Portability and Accountability Act of 1996 ("HIPAA")" and the regulations promulgated under HIPAA. (*Id.* at pp. 3-4 (quoting 45 C.F.R. § 164.502(a)). The appeals officer further reasoned that Ledcke's request for his "mental health treatment" records sought documents that must "be kept confidential" and are, therefore, exempt from disclosure by Section 111 of the Mental Health Procedures Act ("MHPA"), 50 P.S. § 7111. (*Id.* at p. 4). Thus, the appeals officer held that "to the extent [Ledcke] seeks

records relating to medical and mental health treatment, the appeal is denied."[3] (*Id.*). As a consequence, the OOR

---

3. Section 102 of the RTKL defines a "[p]ublic record" as "[a] record, including a financial record, of a...local agency that: (1) is not exempt under [65 P.S. § 67.708]; (2) is not exempt from being disclosed under any other Federal or State law or regulation or judicial order or decree; or (3) is not protected by a privilege." 65 P.S. § 67.102. HIPAA regulates the conduct of third parties who have access to protected medical information, *Pik v. University of Pennsylvania*, 2010 WL 3933275, at * 4 (E.D. Pa. 2010), and "defines certain patient rights such as the patient's right to access his/her medical record information." *Jones v. Shelby County Government Civil Service Merit Bd.*, 2012 WL 5503859, at * 1 n. 1 (Tenn. Ct. App. 2012). HIPAA empowers the Secretary of the U.S. Department of Health and Human Services to promulgate regulations to implement uniform national standards for the protection and disclosure of health information. *See Citizens for Health v. Leavitt*, 428 F.3d 167, 172 (3d Cir. 2005). Those regulations recognize an individual's right of access to his or her own medical records. See 42 C.F.R. § 482.13(d) (2) ("The patient has the right to access information contained in his or her clinical records within a reasonable time frame."); 45 C.F.R. § 164.524(a)(1) (stating that, as a general rule, "an individual has a right of access to inspect and obtain a copy of protected health information about the individual in a designated record set...."). "The obvious thrust of the regulations is to deny inappropriate access to a patient's records by third parties, not to deny a patient access to his or her own records." *Merryfield v. Kansas Social and Rehabilitation Services*, 44 Kan. App. 2d 324, 332, 236 P.3d 528, 534 (2010) (citing 42 C.F.R. § 482.13(d)(2)).

The OOR quoted 45 C.F.R. § 164.502(a) in support of its conclusion that Ledcke's medical records were exempt from disclosure. Although that regulation generally states that "[a] covered entity may not use or disclose protected health information, except as permitted or required by this subpart," it also identifies "[p]ermitted uses and disclosures" and provides that "[a] covered entity is permitted to use or disclose protected health information...[t]o the individual." 45 C.F.R. §164.502(a)(1)(i). A possible basis for denying Ledcke access to his own medical records can be found in a separate regulation which states that "[a] covered entity that is a correctional institution or a covered health care provider acting under the direction of the correctional institution may deny, in whole or in part, an inmate's request to obtain a copy of protected health information if obtaining such copy would jeopardize the health, safety, security, custody or rehabilitation of the individual or of other inmates, or the safety of any officer, employee, or other person at the correctional institution or responsible for the transporting of the inmate." 45 C.F.R. § 164.524(a)(2)(ii).

The state MHPA and the accompanying regulations adopted by the Department of Public Welfare also provide that "the patient controls the release of information contained in his or her [mental health] records and is entitled to access those records." *Christy v. Wordsworth-at-Shawnee*,

directed the county "to provide all responsive records, with the exception of [Ledcke's] medical and mental health records, to [Ledcke] within thirty (30) days." (*Id.*).

The county failed to produce those records which the OOR had determined were discoverable, and as a result, Ledcke filed the instant "petition to enforce final determination of office of open records pursuant to section 1302 of the Pennsylvania Right-To-Know Law, 65 Pa.C.S. § 67.1302" seeking the prompt production of those records and the assessment of fees and costs against the county pursuant to 65 P.S. § Ledcke's requested relief should not be granted, and an evidentiary hearing was scheduled for December 11, 2012. (Docket Entry No. 1). After that order was served upon the county, the open records officer for the county filed a "final determination affidavit" attesting that the county had forwarded all the responsive records to Ledcke via the Federal Correctional Institution in Talladega, Alabama. (Docket Entry No. 4, Exhibit A). The county filed a response to Ledcke's petition on November 16, 2012, and at the request of the county, the hearing was continued to January 31, 2013. (*Id.* Nos. 4, 6).

At the time of the evidentiary hearing, the county represented that once Ledcke filed his change of address of record, (*Id.* No. 5), it resent the responsive materials to Ledcke at the federal penitentiary in Florence, Colorado.

749 A.2d 557, 558 (Pa. Cmwlth. 2000) (citing 55 Pa. Code § 5100.31(f)). *See also* 55 Pa. Code § 5100.33(d). Therefore, although the MHPA and the foregoing regulations operate to deny third parties access to Ledcke's mental health treatment records, they do not serve as grounds for denying Ledcke access to his own mental health records.

The county Solicitor stated that Ledcke subsequently contacted him by telephone and indicated that the prison officials in Colorado were not granting him access to the county's RTKL response and records. At Ledcke's request, the county Solicitor forwarded a third set of responsive materials to Ledcke's relative, Lacrsa Williams, in Sydney, Ohio. Neither the county nor the court has received any further communication or filing from Ledcke.

## Validity of "Petition to Enforce"

Ledcke instituted this action by filing a "petition to enforce final determination of office of open records" pursuant to 65 P.S. § 67.1302. Section 1302 of the RTKL governs the jurisdiction of common pleas courts in RTKL disputes following a final determination by the OOR relating to records of local agencies, and states that "[w]ithin 30 days of the mailing date of the final determination of the [OOR] relating to a decision of a local agency issued under section 1101(b), or of the date a request for access is deemed denied, a requester or local agency may file a petition for review or other document as required by rule of court with the court of common pleas for the county where the local agency is located." 65 P.S. § 67.1302(a). By its plain language, section 1302 only authorizes the filing of "a petition for review or other document as required by rule of court" as the appropriate procedural device for invoking common pleas court jurisdiction, and does not provide for the filing of a civil action by way of a "petition to enforce."

Under Pennsylvania Rule of Civil Procedure 1007, a civil action may be commenced solely by the filing of a complaint or a praecipe for a writ of summons. *See* Pa.R.C.P. 1007. An action may be instituted by the filing of a petition and rule to show cause only if it is expressly authorized by statute or rule of court. *Petition of Tax Claim Bureau of Westmoreland County*, 149 Pa. Cmwlth. 532, 539, 613 A.2d 634, 638 (1992), *app. denied*, 533 Pa. 615, 618 A.2d 404 (1992); *Rusbarsky by Rusbarsky v. Rock*, 324 Pa. Super. 28, 31, 471 A.2d 107, 108 (1984). For example, a party may initiate a civil proceeding by the filing of a petition to enforce an order of the Pennsylvania Labor Relations Board pursuant to 42 P.S. § 1101.1501, *see Lawrence County v. Com., Pennsylvania Labor Relations Bd.*, 79 Pa. Cmwlth. 14, 20-21, 469 A.2d 1145, 1147-1148 (1983), a petition to enforce and confirm an arbitration award under 42 Pa.C.S.A. § 7315, *see Borough of Dunmore v. Dunmore Police Department*, 106 Cmwlth. 461, 464-465, 526 A.2d 1250, 1252-1253 (1987), *app. denied*, 518 Pa. 614, 540 A.2d 535 (1988), a petition to enforce subpoenas issued by the Pennsylvania Securities Commission under 70 P.S. § 1-510(b), *see In re American Bank and Trust Company of Pennsylvania*, 23 Pa. Cmwlth. 434, 438-439, 332 A.2d 858, 861 (1975), a petition to enforce an arbitration agreement, *see Messa v. State Farm Insurance Company*, 433 Pa. Super. 594, 596, 641 A.2d 1167, 1168 (1994), a judgment creditor's petition to enforce a judgment against a school district pursuant to 24 P.S. § 6-611, *see Coco Brothers, Inc. v. Board of Public Education of School District of Pittsburgh*, 530 Pa. 309,

310-311, 608 A.2d 1035, 1035-1036 (1992), a petition to enforce subpoenas issued by Philadelphia City Council in accordance with Section 8 of the First Class City Code, 53 P.S. § 12528, *see City Council of City of Philadelphia v. Greene*, 856 A.2d 217, 224-225 (Pa. Cmwlth. 2004), *app. denied*, 584 Pa. 710, 885 A.2d 43 (2005), and a petition to enforce, in the Commonwealth Court of Pennsylvania, by a governmental unit seeking to enforce an order issued under a statute which it administers.[4] See Pa.R.A.P. 3761(a) ("When a government unit seeks to enforce an order issued under a statute which it administers, it may initiate the proceedings by filing a petition to enforce.").

However, no statute or rule of court endorses the filing of a "petition to enforce" the OOR's final determination as a substitute for original process in initiating a civil action in compliance with Pa.R.C.P. 1007.[5] If a party initiates

---

4. A petition to enforce may also be filed in a pending suit that has been commenced by the filing of a complaint or writ of summons as original process. *See, e.g., Salsman v. Brown*, 51 A.3d 892, 893 (Pa. Super. 2012) (petition to enforce settlement agreement in breach of contract action); *Annechino v. Joire*, 946 A.2d 121, 124-125 (Pa. Super. 2008) (petition to enforce marriage settlement agreement under 23 Pa.C.S.A. § 3105).

5. Other inmates have sought to enforce an OOR final determination by filing a "petition to enforce" as initial process. *See Byerly & Schnee, What Every Lawyers Needs to Know About the Right-To-Know Law*, 83 Pa. B.A.Q. 116, 127 n. 120 (July 2012) (citing *Thomas v. Wolgemuth and Lebanon County Right To Know Office*, No. 2012 00063 (Leb. Co. April 10, 2012) (granting pro se prisoner's petition to enforce OOR's final determination)). The filings in *Thomas* reflect that the inmate petitioner submitted a proposed "Order to Enforce Final Determination of PA Office of Open Records," which the trial judge signed on April 10, 2012, after Lebanon County and its Open Records Officer failed to answer the rule to show cause by the rule returnable date of January 25, 2012. (See "Motion to Move the Court to Enter Order to Enforce Final Determination of PA Office of Open Records," at ¶5 in *Thomas, supra.*). Additionally, an enforcement action was instituted in the Court of Common Pleas of Lackawanna County by the filing of a "Petition to Enforce Final

44

a civil proceeding by the filing of a petition and rule to show cause, but no statute or rule expressly authorizes that use of a petition and rule as original process, the civil action is "improperly commenced" and "the common pleas court ha[s] no power to act and no jurisdiction over" the parties. *Flaherty v. Burke*, 101 Pa. Cmwlth. 19, 23, 515 A.2d 365, 367 (1986). *Accord In re Casale*, 512 Pa. 548, 554, 517 A.2d 1260, 1263 (1986) ("Even on the civil side of our courts, an action brought by petition and rule, neither authorized by statute nor auxiliary to jurisdiction already obtained and not designed to correct the court's own records, is a nullity and confers no jurisdiction on the court."); *In re Correction of Official Records with Civil Action*, 44 Pa. Cmwlth. 511, 513-514, 404 A.2d 741, 742-743 (1979) (reversing trial court order directing recorder of deeds to remove oil and gas leases from public records, and holding that lower court lacked jurisdiction and power to act since suit was instituted by petition and rule as original process, even though there was no statutory authorization for such use of a petition and rule).

The more appropriate procedural device for

Determination of Office of Open Records" and the issuance of a Rule to Show Cause in *Rogan v. County of Lackawanna and Correctional Care, Inc.*, No. 09 CV 6858 (Lacka. Co. Oct. 13, 2009). However, prior to the scheduled rule to show cause hearing, the parties agreed to stay that enforcement action pending the outcome of a prior suit, *Lackawanna County v. Correctional Care, Inc.*, No. 09 CV 6194 (Lacka. Co.). *See Rogan v. County of Lackawanna and Correctional Care, Inc.*, No. 09 CV 6858, Minora, J. (Lacka. Co. Nov. 2, 2009) (approving joint motion to stay proceedings). Thus, the propriety of initiating a civil action by the filing of a "Petition to Enforce Final Determination of Office of Open Records" was never addressed in *Rogan*, nor do the limited filings in that case suggest that an issue was ever raised regarding the filing of a civil action via a "petition to enforce."

commencing an action to enforce the OOR's decision and to secure the requested public records would appear to be the filing of a complaint in mandamus pursuant to Pa.R.C.P. 1093(1) and 1095 seeking to compel the local agency's open records officer to produce the relevant records. The writ of mandamus exists to compel official performance of a ministerial act or mandatory duty, as opposed to a discretionary one, and may issue if the petitioner has "a clear legal right, the responding public official has a corresponding duty, and no other adequate and appropriate remedy at law exists." *Fagan v. Smith*, 41 A.3d 816, 818 (Pa. 2012). If the OOR has issued a final determination which has not been timely appealed by the local agency under 65 P.S. § 69.1302, the requester would have a clear legal right to the records at issue and the local agency's open records officer would have a concomitant statutory obligation to produce those materials. The performance of that statutory duty would be mandatory, rather than discretionary. Furthermore, since the RTKL does not expressly provide a successful requestor with a designated means to enforce compliance with an OOR final determination, an available remedy at law does not exist.[6]

---

6. There is decisional authority under the former Right to Know Act stating that mandamus is not a proper remedy for a requestor who has been denied access to local agency records, but who has not sought recourse under the appeal procedure set forth in that Act. Under Section 4 of the old Right-to-Know Act, Act of June 21, 1957, P.L. 390, § 4, 65 P.S. § 66.4 (*repealed*), any citizen who was denied access to public records of a local agency could appeal that denial to the common pleas court, and "[i]f such court determine[d] that such denial was not for just and proper cause under the terms of [the former] act, it may enter such order for disclosure as it may deem proper." *See Weaver v. Department*

In connection with a duly instituted civil action, a requester may possibly seek to obtain records pursuant

*of Corrections*, 702 A.2d 370, 371 n. 1 (Pa. Cmwlth. 1997), *app. denied*, 553 Pa. 685, 717 A.2d 536 (1998). In 2002, Section 4 of the prior Act was amended to eliminate the "just and proper cause" standard. *See Van Osdol v. Com., Department of Transportation*, 909 A.2d 428, 430 n. 3 (Pa. Cmwlth. 2006). The former Right to Know Act, 65 P.S. §§ 66.1-66.4, was repealed and replaced by the current RTKL, Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101-67.3104. *See Johnson v. Pennsylvania Convention Center Authority*, 49 A.3d 920, 921 n.1 (Pa. Cmwlth. 2012). The present RTKL affords an aggrieved requester an initial administrative appeal to the OOR, see 65 P.S. §§ 67.1101-67.1102, as well as a right of judicial review by appealing the OOR determination to the Commonwealth Court or the common pleas court, see 65 P.S. §§ 67.1301-67.1305. *See also Bowling v. Office of Open Records*, 990 A.2d 813, 821-823 (Pa. Cmwlth. 2010), *app. granted in part*, 609 Pa. 265, 15 A.3d 427 (2011).

In *Wiley v. Woods*, 393 Pa. 341, 141 A.2d 844 (1958), a citizen who was denied the opportunity to examine field investigation notes of the city planning commission instituted a mandamus action against the director of the planning commission, rather than appealing the local agency's denial under Section 4 of the old Right-to-Know Act, 65 P.S. § 66.4 (*repealed*). The lower court granted the mandamus request and directed the planning commission to permit the requester to examine the planning commission's field investigation notes. *Id.* at 345, 141 A.2d at 846-847. The Supreme Court of Pennsylvania reversed and held that the citizen did not have "the right of examination and inspection of appellant's 'field investigation notes' which are clearly not public records." *Id.* at 353, 141 A.2d at 850-851. In a footnote, the Supreme Court noted that the citizen's "resort to mandamus as a remedy was improper" since "Section 4 of the statute provides the exclusive remedy to a person denied the right of examination and inspection of public records." *Id.* at 350 n. 9, 141 A.2d at 849 n.9. *Accord, Starobin v. Department of Revenue*, 53 Pa. Cmwlth. 543, 545-546, 418 A.2d 800, 802 (1980) (stating that the requesters "... are confronted with a formidable procedural problem resting in the fact that the Supreme Court has declared that resort to mandamus as a means of obtaining access to public records is improper based on Section 4 of the Right-to-Know Act, Act of June 21, 1957, P.L. 390, as amended, 65 P.S. § 66.4, providing for appeals to courts from the denial of a request for access to public records."), app. quashed, 494 Pa. 103,429 A.2d 1112 (1981). In contrast to the requesters in *Wiley* and *Starobin*, Ledcke did avail himself of the appeal remedy set forth in the RTKL, but at the time that he commenced this civil action, had not received the records that the OOR had determined were subject to disclosure. Hence, the prospective use of a mandamus action by a prevailing requester seeking production of public records found to be accessible by the OOR, would appeal to be distinguishable from *Wiley* and *Starobin* where the requesters did not exhaust their available statutory remedies.

to an unappealed OOR final determination by requesting a civil contempt order against the non-compliant open records officer who has been designated by the local agency under 65 P.S. § 67.502 to respond to RTKL requests on behalf of the local agency. *See* 65 P.S. § 67.502. The OOR is an administrative agency, *see Scott v. Delaware Valley Regional Planning Commission*, 56 A.3d 40, 43-44 (Pa. Cmwlth. 2012), and some precedent recognizes that a local agency may be held in civil contempt of an order issued by an administrative agency. *See, e.g., Com., Department of Environmental Resources v. Derry Township*, 466 Pa. 31, 39, 351 A.2d 606, 610 (1976) (Department of Environmental Resources' petition seeking to have municipality held in contempt of administrative order under 45 P.S. § 691.210 found to be "proper procedure."). *But see Petition for Enforcement of Subpoenas to John Doe Corporations*, 507 Pa. 137, 160, 489 A.2d 182, 194 (1985) (Zappala, J., dissenting) (opining that 42 Pa.C.S.A. § 4132, "Attachment and summary punishment for contempts," does not grant "the courts of this Commonwealth...the power to impose the punishment of civil contempt for disobedience or neglect of the process of administrative agencies," absent some statutory authority by the legislature). To secure a finding of civil contempt in order to coerce compliance and, if appropriate, to compensate the complainant for losses sustained, the complainant must establish by a preponderance of the evidence that the contemnor had notice of the order, that its non-compliance was volitional, and that the contemnor acted with wrongful intent. *MacDougall v. MacDougall*, 49 A.3d 890, 892 (Pa.

Super. 2012); *In re Contempt of Christopher P. Cullen,* 849 A.2d 1207, 1210-1211 (Pa. Super. 2004), *app. denied,* 582 Pa. 676, 868 A.2d 1208 (2005). It is conceivable that a requester, who is denied access to public documents that the OOR has determined to be discoverable, may also seek to obtain those records by way of a civil contempt petition.

The county has not raised an objection to the propriety of the "petition to enforce" that has been filed by Ledcke. Therefore, it is not necessary to decide whether such a petition is an appropriate form of original process under Pa.R.C.P. 1007 or the RTKL, Of course, the Legislature may resolve this procedural dilemma by amending the RTKL to provide a successful requester with a statutorily authorized means of seeking relief from the Commonwealth Court and the common pleas courts to enforce a final determination of the OOR which has not been timely appealed by the Commonwealth, legislative, judicial or local agency.

Ledcke's petition seeks to enforce compliance with the OOR's final determination by compelling the county to produce the materials that the OOR appeals officer found to be accessible. It is undisputed that the county has now produced those records on three separate occasions, and the record does not contain any submission or communication suggesting that Ledcke is dissatisfied with the county's response. Consequently, Ledcke's petition to enforce is now moot and will be dismissed on that basis.

## Request for Fees and Costs

In his "petition to enforce," Ledcke also seeks an award of "all costs and fees" in accordance with section 1304 of the RTKL. (Docket Entry No. 1, at pp. 6-8). Section 1304 governs the recovery of "[c]ourt costs and attorneys fees" in judicial appeals of OOR determinations, and provides:

(a) **Reversal of agency determination.** — If a court reverses the final determination of the appeals officer or grants access to a record after a request for access was deemed denied, the court may award reasonable attorney fees and costs of litigation or an appropriate portion thereof to a requester if the court finds either of the following:

(1) the agency receiving the original request willfully or with wanton disregard deprived the requester of access to a public record subject to access or otherwise acted in bad faith under the provisions of this act; or

(2) the exemptions, exclusions or defenses asserted by the agency in its final determination were not based on a reasonable interpretation of law.

(b) **Sanctions for frivolous requests or appeals.** — The court may award reasonable attorney fees and costs of litigation or an appropriate portion thereof to an agency or the requester if the court finds that the legal challenge under this chapter was frivolous.

(c) **Other sanctions.** — Nothing in this act shall prohibit a court from imposing penalties and costs in

50

accordance with applicable rules of court.

65 P.S. §67.1304.

Section 1304(a) provides two bases for a requester to recover counsel fees and costs. First, the successful requester may recover such fees and costs if the agency denied access to a public record willfully or with wanton disregard, or otherwise acted in bad faith in responding to a RTKL request. *See* 65 P.S. § 67.1304(a)(1). Alternatively, a requester may be awarded counsel fees and costs if the exemption, exclusion or defense asserted by the agency was not based upon a reasonable interpretation of the law. *See* 65 P.S. § 67.1304(a)(2). By contrast, a prevailing agency may only recover counsel fees and costs under the singular ground set forth in Section 1304(b). Under subsection (b), the prevailing agency, as well as a successful requester, may recover counsel fees and costs if the legal challenge advanced by the unsuccessful litigant was "frivolous." 65 P.S. §67.1304(b). Thus, Section 1304 provides three grounds for the recovery of counsel fees and costs by a prevailing requester, but only one basis for such an award to an agency which succeeds on appeal. *Cf. Scott*, 56 A.3d at 47-48.

To receive an award of counsel fees and costs under Section 1304(a), the requester must either establish willful, wanton or bad faith conduct by the agency, or, at a minimum, a legal argument on appeal that was the product of an unreasonable interpretation of the governing law. *See Barkeyville Borough v. Sterns*, 35 A.3d 91, 98 (Pa. Cmwlth.

2012) (holding that trial court committed reversible error in awarding attorney fees, and finding "[t]here is no evidence in the record that the Borough acted in bad faith or that it unreasonably interpreted the law."). Counsel fees and costs are recoverable under either of those grounds only if (1) the court reverses the OOR final determination, or (2) the court grants access to records following a deemed denial by the agency, *See* 65 P.S. § 67.1304(a). The criterion for a counsel fee award set forth in Section 1304(a)(2), i.e., lack of "a reasonable interpretation of law," appears to be less demanding than the willful, wanton and bad faith standard contained in Section 1304(a)(1). *See, e.g., Weiley v. Albert Einstein Medical Center*, 51 A.3d 202, 211 (Pa. Super. 2012) ("Wanton misconduct means that the actor has intentionally done an act of an unreasonable character, in disregard of a risk known to him or so obvious that he must be taken to have been aware of it, and so great as to make it highly probable that harm would follow."); *In re Estate of Warden*, 2 A.3d 565, 574 (Pa. Super. 2010) ("The Pennsylvania Supreme Court has defined bad faith conduct as being motivated by 'fraud, dishonesty or corruption.'"), *app. denied*, 610 Pa. 580, 17 A.3d 1255 (2011).

The recovery of counsel fees and costs under Section 1304(b) applies more broadly to any frivolous "legal challenge" by a party, and unlike Section 1304(a), is not confined to agency conduct in connection with an unsuccessful deemed denial or a reversal of the OOR final determination. Moreover, "an RTKL challenge is frivolous under Section 1304(b) if it is arbitrary, vexatious

or the result of bad faith." *Pennsylvania State Troopers Association v. Scolforo*, 18 A.3d 435, 442 (Pa. Cmwlth. 2011). Reported decisions involving an award of counsel fees and costs under Section 1304 are apparently non-existent, and two commentators have observed:

> As of this writing, the authors are unaware of any unappealed judicial award of attorney fees or civil penalties based on the finding that either an agency acted in bad faith or based its reasons for denying access to records on an unreasonable "interpretation of the law," although the Commonwealth Court has reversed a Court of Common Pleas of Venango County decision awarding attorney fees based on a lack of evidence "that the Borough acted in bad faith or that it unreasonably interpreted the law." Similarly, while the RTKL provides that both requesters and agencies may be subject to attorney fees and costs of litigation for pursing frivolous appeals, no court has yet made such a finding.

*Byerly & Schnee, supra*, at 129 (footnotes omitted).

In *Andrew Staub and the Citizens Voice v. City of Wilkes-Barre and LAG Towing, Inc.*, No. 8294 of 2012 (Luz. Co. Oct. 16, 2012), Judge Lesa S. Gelb awarded counsel fees to a prevailing requester after finding that the City of Wilkes-Barre and its contracted towing company, LAG Towing, Inc., ("LAG"), had engaged in frivolous conduct. On July 22, 2011, a Luzerne County newspaper, *The Citizens Voice*, and its reporter, Andrew

Staub, had requested LAG's towing records and receipts from the City of Wilkes-Barre, and on August 29, 2011, the City and LAG denied the request on the ground that the records were not "accessible under the Right-to-Know Law." *Id.* at p.2. At the time that LAG had affirmatively represented that the towing records were not discoverable under the RTKL, it knew that the requested records had been destroyed and no longer existed. *Id.* at p. 3. The city solicitor likewise "knew that there was a possibility that there were no records based on his conversations with [LAG] in July 2011," and was aware that pursuant to *Moore v. Office of Open Records*, 992 A.2d 907, 909 (Pa. Cmwlth. 2010), the city could have responded to the RTKL request by submitting an affidavit attesting to the non-existence of the records sought. *Id.* at pp. 3-4.

Neither the city nor LAG informed the requesters that the records did not exist, and as a consequence, the requesters filed an appeal to the OOR. *Id.* at p.2. On January 27, 2012, the OOR determined that "providing towing services relating to the city's enforcement of its ordinances, laws or other lawful directives is the performance of a governmental function," under 65 P.S. § 67.506(d)(1), *see SWB Yankees, LLC v. Wintermantel*, 45 A.3d 1029 (Pa. 2012), such that LAG's towing records were subject to disclosure under the RTKL. *Id.* at p.2. After the requesters had secured the favorable determination by the OOR, the city and LAG informed the requesters that the records sought did not exist. *Id.* at pp. 2-3.

In granting the requesters' motion for counsel fees under

Section 1304(b) of the RTKL, Judge Gelb reasoned:

> This court finds that LAG Towing engaged in willful and wanton misconduct when it litigated a matter frivolously. Specifically, the defendant, LAG Towing, Inc., argued that the information contained in its records was confidential, proprietary information when, according to LAG itself, those records did not exist at the time the statement was made. It is beyond comprehension that it was purported that the towing records had confidential, proprietary information contained within them when counsel for LAG never reviewed such documents because [LAG] admitted that no such documents existed. Therefore, no such documents could have ever been reviewed and these non-existent records could not contain confidential or proprietary information. The appeal by LAG Towing to the RTKL request was frivolous when all that was necessary was an affidavit indicating that there were no responsive records.
>
> Additionally, the city of Wilkes-Barre responded to the RTKL request that it did not possess any responsive records. But what the city did not do is indicate that LAG did not have any responsive records when it knew early on that LAG did not have the records, or as [the city solicitor] indicated "he knew it was a possibility that LAG Towing, Inc., had no responsive records to the request fairly early on in this matter." [citation omitted]. To know for sure, all [the city solicitor] had to do was ask [LAG] at that time whether [LAG] in fact

had the responsive records. Wilkes-Barre let LAG take the lead in the RTKL litigation, having a good idea that LAG had no records and failed to ensure that either LAG provided an affidavit of no records or notified the citizens voice or OOR mediator that LAG did not have any records which the Citizens Voice was requesting.

*Id.* at pp. 4-5. Based upon the foregoing findings, the Luzerne County court directed LAG to pay 90 percent of the requester's counsel fees, with the remaining 10 percent to be paid by the city. *Id.* at p. 6. The city and LAG have appealed that counsel fee ruling to the Commonwealth Court of Pennsylvania. *See Staub v. City of Wilkes-Barre.* No. 2140 CD 2012 (Pa. Cmwlth. 2012).

During the hearing on January 31, 2013, counsel for the county represented that the failure to timely furnish the pertinent items to Ledcke was the result of inadvertent oversight rather than deliberate obstruction. In the early summer of 2012, the county was undergoing a transition in its open records officer position, and the new open records officer mistakenly believed that the responsive records were being produced and delivered by the county prison instead of the county administration. Once the county was served with Ledcke's petition to enforce, it promptly provided the responsive materials to Ledcke by forwarding them to the federal penitentiaries in Alabama and Colorado and to his relative in Ohio. The record does not contain any evidence indicating bad faith, willful or wanton conduct, or frivolous legal argument on the part of the county. More importantly, Ledcke has not incurred

any counsel fees or litigation costs since he has proceeded pro se and payment of the filing fee was waived by the clerk of judicial records due to his *in forma pauperis* status. (Docket Entry No. 1). Accordingly, based upon the foregoing, his request for an award of "all costs and fees" will be denied.

And now, February 7, 2013, upon consideration of the "Petition to Enforce Final Determination of Office of Open Records Pursuant to Section 1302 of the Pennsylvania Right-To-Know Law" filed by Petitioner, Shawn Michael Ledcke, the response of the County of Lackawanna, and the evidence introduced during the hearing on January 31, 2013, and based upon the reasoning set forth above, it is hereby ordered and decreed that:

1. The "Petition to Enforce" the final determination issued by the Office of Open Records on June 6, 2012, is dismissed as moot; and

2. The petitioner's request for an award of "all costs and fees" pursuant to 65 P.S. § 67.1304 is denied.